953 So.2d 471 (2007)
ADVISORY OPINION TO THE ATTORNEY GENERAL re EXTENDING EXISTING SALES TAX TO NON-TAXED SERVICES WHERE EXCLUSION FAILS TO SERVE PUBLIC PURPOSE.
Advisory Opinion to the Attorney General re Initiative Requiring Legislative Determination that Sales Tax Exemptions Serve a Public Purpose.
Advisory Opinion to the Attorney General re Initiative Directing Manner by Which Sales Tax Exemptions are Granted by the Legislature.
Advisory Opinion to the Attorney General re Extending Existing Sales Tax to Non-Taxed Services Where Exclusion Fails to Serve Public Purpose.
Advisory Opinion to the Attorney General re Initiative Requiring Legislative Determination that Sales Tax Exemptions Serve a Public Purpose.
Advisory Opinion to the Attorney General re Initiative Directing Manner by Which Sales Tax Exemptions are Granted by the Legislature.
No. SC05-1564, No. SC05-1565, No. SC05-1566. No. SC05-1833, No. SC05-1834, No. SC05-1835.
Supreme Court of Florida.
March 22, 2007.
*476 Bill McCollum, Attorney General, Louis F. Hubener, Chief Deputy Solicitor General, and Lynn C. Hearn, Deputy Solicitor General, Tallahassee, FL, for Petitioner.
Robert L. Nabors and David G. Tucker of Nabors, Giblin and Nickerson, P.A., Tallahassee, FL, for Floridians Against Inequities in Rates, Sponsor.
Cynthia S. Tunnicliff and Howard E. Adams of Pennington, Moore, Wilkinson, Bell and Dunbar, P.A., and Dan R. Stengle, Victoria L. Weber and David L. Powell of Hopping Green and Sams, P.A., Tallahassee, FL, on behalf of Florida Association of Realtors, Inc.; Florida Institute of Certified Public Accountants; Florida Retail Federation; Florida Chamber of Commerce, Inc.; Florida Association of Broadcasters; Florida Manufacturers Association; National Federation of Independent Businesses, Inc.; Florida Farm Bureau Federation, Inc.; Florida Minerals and Chemistry Council, Inc.; Florida Fruit and Vegetable Association, Inc.; Florida Cattlemen's Association, Inc.; Sunshine State Milk Producers, Inc.; Florida Nursery Growers and Landscape Association; Printing Association of Florida and Florida Bankers Association; for Opponents.
ANSTEAD, J.
In 2004, this Court considered and rejected for ballot placement a citizen's initiative previously prepared by Floridians Against Inequities in Rates (FAIR) in Advisory Opinion to the Attorney General re Fairness Initiative Requiring Legislative Determination that Sales Tax Exemptions and Exclusions Serve a Public Purpose, 880 So.2d 630 (Fla.2004) (Fairness Initiative). In an effort to avoid the single subject and ballot summary problems addressed in Fairness Initiative, FAIR has now filed three separate initiative petitions for our mandatory review pursuant to certification from the Attorney General:
SC05-1564: Extending Existing Sales Tax to Non-Taxed Services Where Exclusion Fails to Serve Public Purpose, hereinafter "Extending Sales Tax to Services"
SC05-1565: Initiative Requiring Legislative Determination that Sales Tax Exemptions Serve Public Purpose, hereinafter "Sales Tax Public Purpose Determination"
SC05-1566: Initiative Directing Manner by Which Sales Tax Exemptions are Granted by the Legislature, hereinafter "Initiative Directing Manner"
Each case also has an accompanying petition relating to whether an accompanying financial impact statement meets the requirements of law (case numbers SC05-1833, SC05-1834, and SC05-1835, respectively). The Court has jurisdiction and we have concluded it is appropriate to consolidate all of these related cases for review. See art. IV, § 10; art. V, § 3(b)(10), Fla. *477 Const. We address these proposals sequentially, and conclude that all three proposals meet the single subject requirements of the law; however, we conclude the first two fail to meet the ballot summary requirements because of the confusion and uncertainty created by the effect and importance of certain mandatory dates set out in those proposals.

GENERAL LEGAL PRINCIPLES
When the Court renders an advisory opinion concerning a proposed constitutional amendment arising through the citizen initiative process, the Court limits its inquiry to two issues: (1) whether the amendment itself violates the single-subject requirement of article XI, section 3, Florida Constitution; and (2) whether the ballot title and summary violate the clarity requirements of section 101.161(1), Florida Statutes (2006).
In addressing these two issues, the Court's inquiry is governed by several fundamental principles. First, the Court will not address the merits or wisdom of the proposed amendment. Advisory Op. to the Att'y Gen. re Fla. Minimum Wage Amendment, 880 So.2d 636, 639 (Fla.2004). Second, "[t]he Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people." Id. (quoting Askew v. Firestone, 421 So.2d 151, 156 (Fla. 1982)). Specifically, where citizen initiatives are concerned, "[the] Court has no authority to inject itself in the process, unless the laws governing the process have been `clearly and conclusively' violated." Id. (quoting Advisory Op. to Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d 491, 498-99 (Fla.2002)). We review the proposed amendments with these cautionary principles in view.

I. SINGLE-SUBJECT RULE
Article XI, section 3, Florida Constitution, sets forth the single subject rule requirement for a proposed constitutional amendment arising via the citizen initiative process:
SECTION 3. Initiative.The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.

(Emphasis added.) This Court has articulated the appropriate test:
The single-subject requirement is a "rule of restraint" that was "placed in the constitution by the people to allow the citizens, by initiative petition, to propose and vote on singular changes in the functions of our governmental structure." Advisory Op. to Att'y Gen. re Prohibiting Pub. Funding of Political Candidates' Campaigns, 693 So.2d 972, 975 (Fla.1997) (quoting Fine v. Firestone, 448 So.2d 984, 988 (Fla.1984)). Specifically, the single-subject rule prevents an amendment from engaging in either of two practices: (a) logrolling, or (b) substantially altering or performing the functions of multiple branches of state government.
The single-subject rule prevents logrolling, "a practice wherein several separate issues are rolled into a single initiative in order to aggregate votes or secure approval of an otherwise unpopular issue." See In re Advisory Op. to Att'y Gen.Save Our Everglades, 636 So.2d 1336, 1339 (Fla.1994); see also Advisory Op. to Att'y Gen. re Limited Casinos, 644 So.2d 71, 73 (Fla.1994) ("A primary purpose for the single-subject restriction is to prevent `logrolling,' a *478 practice whereby an amendment is proposed which contains unrelated provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed."); Fine, 448 So.2d at 993 ("The purpose of the single-subject requirement is to . . . avoid voters having to accept part of a proposal which they oppose in order to obtain a change which they support."). In addressing this issue, the Court utilizes a "oneness of purpose" standard. See Fine, 448 So.2d at 990 ("[T]he one-subject limitation deal[s] with a logical and natural oneness of purpose. . . ."). A proposed amendment meets this test when it "may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test. . . ." Id. (quoting City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 320 (1944)).
Fairness Initiative, 880 So.2d at 633-34. We have further determined that the single-subject rule prevents "a single amendment from substantially altering or performing the functions of multiple branches of government and thereby causing multiple `precipitous' and `cataclysmic' changes in state government." Advisory Op. to the Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d 491, 495 (Fla.2002). In addressing this issue, we have explained:
[W]hile most amendments will "affect" multiple branches of government, this fact alone is insufficient to invalidate an amendment on single-subject grounds:
. . . As we explained in detail in [a prior case]:
We recognize that the petition, if passed, could affect multiple areas of government. In fact, we find it difficult to conceive of a constitutional amendment that would not affect other aspects of government to some extent. However, this Court has held that a proposed amendment can meet the single-subject requirement even though it affects multiple branches of government.

Advisory Op. to Att'y Gen. re Fla. Transp. Initiative, 769 So.2d 367, 369-70 (Fla.2000) (emphasis added). Further, "the possibility that an amendment might interact with other parts of the Florida Constitution is not sufficient reason to invalidate the proposed amendment." Limited Casinos, 644 So.2d at 74. The abiding test is as follows:
A proposal that affects several branches of government will not automatically fail; rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test.
Advisory Op. to Att'y Gen. re Fish & Wildlife Conservation Comm'n, 705 So.2d 1351, 1353-54 (Fla.1998).
Advisory Op. to the Att'y Gen. re Additional Homestead Tax Exemption, 880 So.2d 646, 649-50 (Fla.2004).

II. BALLOT TITLE AND SUMMARY
The Court must also review the ballot title and summary for each proposed amendment to ensure they provide fair notice of the content of the amendment to the voters. Section 101.161, Florida Statutes (2006), sets forth the requirements for the ballot title and summary of a proposed constitutional amendment and provides in relevant part:
[T]he substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. . . . The ballot title shall consist *479 of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2006). In this regard we have held:
The basic purpose of this provision is "to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot." See Advisory Op. to Att'y Gen. re Fee On Everglades Sugar Prod., 681 So.2d 1124, 1127 (Fla.1996).
In conducting its inquiry into the validity of a proposed amendment under section 101.161(1), the Court asks two questions. First, the Court asks whether "the ballot title and summary . . . fairly inform the voter of the chief purpose of the amendment." Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d at 497. Second, the Court asks "whether the language of the title and summary, as written, misleads the public." Advisory Op. to Att'y Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998).
Fairness Initiative, 880 So.2d at 635-36. These requirements ensure that the voter will have notice of the issue contained in the amendment, will not be misled as to its purpose, and can cast an intelligent and informed ballot; however, "[i]t is not necessary to explain every ramification of a proposed amendment, only the chief purpose." Advisory Op. to the Att'y Gen. re Save Our Everglades, 636 So.2d 1336, 1341 (Fla.1994) (quoting Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986)).

III. FINANCIAL IMPACT STATEMENT
We also must consider whether the financial impact statements relating to each proposed amendment comport with section 100.371, Florida Statutes (2005). Article XI, section 5, Florida Constitution, addresses financial impact statements and provides as follows in relevant part:
(c) The legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by initiative pursuant to section 3.
(Emphasis added.) Pursuant to article XI, section 5(c), the Legislature amended section 100.371(6), Florida Statutes (2006), addressing the financial impact statement as follows:
(6)(a) Within 45 days after receipt of a proposed revision or amendment to the State Constitution by initiative petition from the Secretary of State or, within 30 days after such receipt if receipt occurs 120 days or less before the election at which the question of ratifying the amendment will be present, the Financial Impact Estimating Conference shall complete an analysis and financial impact statement to be placed on the ballot of the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative. The Financial Impact Estimating Conference shall submit the financial impact statement to the Attorney General and Secretary of State.
. . . .
[(b)]3. Principals of the Financial Impact Estimating Conference shall reach a consensus or majority concurrence on a clear and unambiguous financial impact statement, no more than 75 words in length, and immediately submit the statement to the Attorney General. Nothing in this subsection prohibits the Financial Impact Estimating Conference from setting forth a range of potential *480 impacts in the financial impact statement.
§ 100.371(6), Fla. Stat. (2005). Hence, this Court's review is narrow: the Court is only to determine whether each statement complies with the limited requirements provided in the Florida Constitution and the statutes.
Case No. SC05-1564: Extending Existing Sales Tax to Non-Taxed Services Where Exclusion Fails to Serve Public Purpose
On August 24, 2005, the Attorney General's Office received from the Secretary of State and subsequently certified to this Court an initiative petition seeking to amend the Florida Constitution to extend the existing Florida sales tax to other non-taxed services where the exclusion from taxation fails to serve a public purpose. That proposed amendment is before us in case no. SC05-1564. The full text of the proposed amendment states:
BE IT ENACTED BY THE PEOPLE OF FLORIDA THAT:
Article III of the Florida Constitution is hereby amended to add the following as Section 22:
Extension of sales tax to non-taxed services.
(a) The legislature shall, prior to July 1, 2008, review each service rendered for compensation that is not taxed under the existing sales tax authorized in Chapter 212, Florida Statutes, and shall exempt from future taxation only those services whose exemption is determined to advance or serve a public purpose. Except for the payment of employee salaries and benefits, all services that are not exempted by the legislature shall be subject to the existing sales tax effective January 1, 2009.
(b) To accomplish the public purpose review of each service that is mandated in this section, a single service shall be that rendered by a business, industry or profession with at least the same first four digits in its NAICS code number as described by the North American Industry Classification System code published by the United States Census Bureau, or its successor in function.
The ballot title for the proposed amendment provides:
Extending existing sales tax to non-taxed services where exclusion fails to serve public purpose.
The summary for the proposed amendment states:
Except for the payment of employee salaries and benefits, all non-taxed services provided for compensation shall be reviewed by the Legislature to determine whether the exclusion of each service from taxation serves a public purpose. Upon completion of such review, services currently not taxed and which are not exempted from taxation by the Legislature shall be subject to the sales tax on January 1, 2009.

ISSUE 1: Single Subject Rule

ANALYSIS
The first issue for the Court to address is whether this initiative violates the single subject requirement. As noted above, the single-subject rule prevents an amendment from engaging in either of two practices: (a) logrolling, or (b) substantially altering or performing the functions of multiple branches of state government.

A. Logrolling
First, the Court must determine whether the initiative engages in logrolling. As explained above, "[u]nity of object and plan is the universal test." Fairness Initiative, 880 So.2d at 634 (quoting Fine v. Firestone, 448 So.2d 984, 990 (Fla. *481 1984)). A proposed amendment meets this test when it "may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme." Id. (quoting Fine, 448 So.2d at 990).
The sponsor contends that this initiative is permissible and simply directs the Legislature to review each service rendered for compensation that is not taxed under the existing sales tax and to exempt from future taxation only those services whose exemption is determined by the Legislature to advance or serve a public purpose. FAIR further contends that the current proposed amendment does not have the problems addressed by the Court the last time in Fairness Initiative, 880 So.2d at 630. We agree, and conclude that this proposal meets this requirement because it addresses the single subject of the Florida sales tax and the closely related matter of exemptions to the sales tax. We conclude that the sales tax scheme proposed "may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme." Fairness Initiative, 880 So.2d at 633-34 (quoting Fine, 448 So.2d at 990). In other words, a system for determining exemptions logically has a natural relation to a scheme for extending the sales tax to services not now taxed.
In this Court's prior opinion in Fairness Initiative, we implicitly recognized that mandating the Legislature's consideration of a sales tax on services performed in Florida for a fee before creating exemptions to the same tax was one discrete subject. Contrary to the assertions in opposition to certification of the present proposal, this does not mean that an initiative requiring only the consideration of such a tax by the Legislature mandates imposition of the tax on all services across the board and thereby engages in logrolling. To the contrary, the fact that this proposal would permit some services to be taxed by the Legislature and some to be exempted does not violate the single-subject requirement since the proposed amendment is merely setting up a system for legislative consideration and not itself mandating or selecting which services would be taxed and which would be exempt.

B. Substantially Altering the Function of Multiple Branches of Government
Next, we review whether the initiative substantially alters or performs the functions of multiple branches of government "thereby causing multiple `precipitous' and `cataclysmic' changes in state government." Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d at 495. While most constitutional amendments will "affect" multiple branches of government in some way, this fact alone is insufficient to invalidate an amendment on single subject grounds. The relevant test is whether "a proposal [so] substantially alters or performs the functions of multiple branches that it violates the single-subject test." Advisory Op. to Atty. Gen. re Fish & Wildlife Conservation Comm'n, 705 So.2d 1351, 1354 (Fla.1998).
The opponents of the amendment contend that the tax amendment leaves too many unanswered questions and points to a prior attempt in 1987 where the Legislature attempted to create a service tax by law, which was repealed after six months of controversy and three special sessions. The opponents also submit an extensive discussion of questions they submit will be left unanswered by the amendment, such as, "In the absence of legislation, how will an [executive] agency [address details of implementation] without violating the Separation of Powers Doctrine of Article II, section 3?" We conclude, however, that *482 these arguments miss the mark and do not provide an independent ground to strike the amendment.
Indeed, objections on this ground must be focused on and directly relate to the narrow question at hand: whether the initiative actually and substantially alters the functions of multiple branches of government. In this regard, we conclude that it is only the legislative branch that is directly affected by the proposed amendment since the amendment directs that branch to broadly review the existing scheme of the imposition of the sales tax and to grant exemptions to such tax only when a public purpose can be achieved. Of course, this proposal may affect the operation of the executive and judicial branches, but it does so only in the general sense that any constitutional provision mandating action by the Legislature does so. In essence, those branches are no more affected here by the effect of the amendment than they would be when the Legislature itself acts on a sales tax issue under existing law. The proposal, therefore, does not substantially alter or perform the functions of multiple branches or affect the other branches in a "cataclysmic" or "precipitous" way. See Advisory Op. to Atty. Gen. re Fla. Transp. Initiative, 769 So.2d 367, 369-70 (Fla. 2000).

ISSUE 2: The Ballot Title and Summary

ANALYSIS
The second issue raised is whether the ballot title and summary provides fair notice to the voters. To answer this question, the Court must consider two questions: (1) whether "the ballot title and summary . . . fairly inform the voter of the chief purpose of the amendment"; and (2) "whether the language of the title and summary, as written, misleads the public." Fairness Initiative, 880 So.2d at 635-36 (quoting Right to Treatment & Rehab., 818 So.2d at 497 and Advisory Op. to Atty. Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla. 1998)).
The summary for the proposed amendment provides as follows:
Except for the payment of employee salaries and benefits, all non-taxed services provided for compensation shall be reviewed by the Legislature to determine whether the exclusion of each service from taxation serves a public purpose. Upon completion of such review, services currently not taxed and which are not exempted from taxation by the Legislature shall be subject to the sales tax on January 1, 2009.
The ballot title for the proposed amendment states, "Extending existing sales tax to non-taxed services where exclusion fails to serve public purpose." The summary and ballot title need not "explain every ramification of a proposed amendment, only the chief purpose." Save Our Everglades, 636 So.2d at 1341 (quoting Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla. 1986)). In this case, we conclude the summary does just that in both its title and explanatory statement directly focusing on "[e]xtending existing sales tax to non-taxed services where exclusion fails to serve public purpose." Rarely have we been presented with a summary that so directly and unambiguously captures the essence of the proposed amendment. However, we must also review the summary through the lens of the critical dates the amendment contemplates to determine whether the summary may be misleading or confusing.
In supplemental briefing directed by this Court, the parties have addressed the change in circumstances which have delayed the initiative from being placed on the ballot until November 2008, with particular reference to certain deadlines explicitly provided for within the initiative *483 that will necessarily have expired by the time the initiative is voted upon and becomes effective.
This Court considered a somewhat similar issue in Advisory Opinion to the Attorney General re Florida Locally Approved Gaming, 656 So.2d 1259 (Fla.1995) ("FLAG Initiative"). In FLAG Initiative, we considered the validity of an initiative petition circulated by FLAG where FLAG had failed to obtain the requisite number of verified signatures in support for proper placement on the 1994 ballot. The initiative's main purpose was to authorize gaming at twenty casinos throughout the state. However, the proposal also directed the Legislature to provide for the licensing, regulating, and taxation of the gaming by July 1, 1995  a deadline that could not be met since the amendment would not appear at the earliest until the 1996 ballot.
The Governor and Cabinet opposed the proposal and asserted that the ballot summary was defective because it promised legislative regulation that could not be timely effected since the July 1995 deadline would have expired by the time the initiative could appear on the ballot in 1996. However, the Court rejected this argument:
The Governor and Cabinet assert that the deadline is critically important to the voter's evaluation of the text of the proposed amendment. We disagree. We find that the "critically important" aspect of this portion of the proposed amendment is that the Legislature must implement this provision. It clearly is not intended to be self-executing. Under this provision, the Legislature must enact legislation to license, regulate, and tax casinos and, if the amendment is adopted, it will have to do so within a reasonable time after the proposal's adoption. The fact that the Legislature will not be able to exercise that authority by the specific date noted in the proposed amendment does not, in our view, void the amendment. We conclude that, because the summary includes language that clearly informs the voter that gaming will be licensed, regulated, and taxed by legislative enactment, the summary is not misleading on this issue.
Id. at 1263. The Court addressed the deadline for legislative implementation:
Section (d) of the text of the proposed amendment provides that the Legislature must implement the provisions of the proposed amendment concerning the licensure, regulation, and taxation of gaming by general law enacted no later than July 1, 1995. As discussed earlier in this opinion, the proposed amendment will not appear on the ballot until 1996 at the earliest. In light of this fact, it appears that the proposed amendment has established an impossible deadline. This is a direct result of the unnecessary use of date-specific deadlines when a more general deadline would suffice. For example, the deadline could have been stated as "within 180 days of the voters' approval of this amendment," or language to that effect. Proponents of amendments to the constitution would be well advised to avoid this type of problem in the future. We find that, in the instant case, this deadline for legislative action does not void the proposal because we conclude that it does not affect the substantive provisions of the proposed amendment requiring the Legislature to implement the proposal. The intent is clear that the Legislature must act within a reasonable time. If the Legislature does not act there is a remedy. See Dade County Classroom Teachers Ass'n v. Legislature, 269 So.2d 684 (Fla.1972). We find that, if adopted, *484 this proposed amendment requires the Legislature to implement this provision within a reasonable time after its adoption.
Id. at 1263-64. Hence, we concluded that the time restrictions in the proposal were not fatal to its placement on the ballot. The Court then concluded that the initiative's ballot title and summary were not defective and held that it complied with the single-subject requirement.
We find the circumstances in FLAG Initiative to be distinguishable from the circumstances we now consider, because in FLAG Initiative legislative regulation was clearly contemplated as a predicate to the amendment becoming operable, whereas, in this case, the critical part of the amendment is self-executing. We likewise reject FAIR's contention that, despite the clear language of the initiative, legislative review may still occur because the proposal is not self-executing and the Legislature will have time after the amendment is passed in which it can extend these deadlines. In Gray v. Bryant, 125 So.2d 846, 851 (Fla.1960), this Court set forth the relevant inquiry to determine whether a constitutional provision is self-executing: "The basic guide, or test, in determining whether a constitutional provision should be construed to be self-executing, or not self-executing, is whether or not the provision lays down a sufficient rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment. If the provision lays down a sufficient rule, it speaks for the entire people and is self-executing." See also Black's Law Dictionary 1391 (8th ed. 2004) (defining "self-executing" as "effective immediately without the need of any type of implementing action").
Here, the language of the proposed amendment states, "The legislature shall, prior to July 1, 2008, review each service rendered for compensation that is not taxed under the existing sales tax authorized in chapter 212, Florida Statutes, and shall exempt from future taxation only those services whose exemption is determined to advance or serve a public purpose. Except for the payment of employee salaries and benefits, all services that are not exempted by the Legislature shall be subject to the existing sales tax effective January 1, 2009." (Emphasis supplied.) Based on the language and the structure of the amendment, it appears the initiative was intended to be self-executing, certainly in its initial effect, in imposing significant consequences if the Legislature failed to act by July 1, 2008. If the Legislature fails to conduct its review and exempt those services that serve a public purpose by the stated deadline, this failure to act would automatically cause all then non-exempted services to be taxed.
In turning to the specific arguments made in this case, the opponents first contend that the missed deadline impacts the ballot title and summary because under the timeframe explicitly required under the proposal, there can be no legislative review, a review which serves as the primary purpose of the initiative. Specifically, subsection (a) of the proposed amendment provides:
(a) The legislature shall, prior to July 1, 2008, review each service rendered for compensation that is not taxed under the existing sales tax authorized in Chapter 212, Florida Statutes, and shall exempt from future taxation only those services whose exemption is determined to advance or serve a public purpose. Except for the payment of employee salaries and benefits, all services that are not exempted by the legislature shall be *485 subject to the existing sales tax effective January 1, 2009.
The ballot summary states:
Except for the payment of employee salaries and benefits, all non-taxed services provided for compensation shall be reviewed by the Legislature to determine whether the exclusion of each service from taxation serves a public purpose. Upon completion of such review, services currently not taxed and which are not exempted from taxation by the Legislature shall be subject to the sales tax on January 1, 2009.

(Emphasis added.) We conclude that, based on the express terms of the initiative, the time in which the Legislature has to enact exemptions will have run by the time the proposal would appear on the ballot in November, 2008, and thereafter become operative. Accordingly, there will be no time for the legislative review expressly contemplated in the proposal and summary, which, as both parties agree, is a key component of the initiative. Moreover, because the summary itself informs the voters that the services not exempted will be taxed on January 1, 2008, we conclude that voters may be confused and misled as to how or whether the legislative review could occur. We do not believe voters should be compromised in this manner in the important decision to place this provision in our constitution.
We also conclude that this problem cannot be "fixed" in the same manner we approved in FLAG Initiative, where the Court held that the Legislature can simply proceed with the enacting legislation within a reasonable time since the provision contemplated no casino activity without regulation. Because legislative review will not be possible prior to the self-executing provisions of the amendment becoming effective, and because this self-executing provision is a key component of the initiative and the summary, we conclude this constitutes a flaw in the ballot summary. Accordingly, we conclude that the ballot summary cannot be approved because of the confusion it will present to the voter as to the effectiveness and operation of the proposal in view of the conflicting deadlines. As noted above, however, we find no other flaw in the ballot title and summary.

ISSUE 3: Financial Impact Statement

ANALYSIS
This Court must also determine whether the financial impact statement complies with the requirements provided in the Florida Constitution and the statute. In this case, the proposed financial impact statement provides:
Although state and local governments could potentially receive substantial revenue from non-taxed services subject to legislative review, the probable impact of the amendment is dependent upon future action of the legislature and cannot be determined. If the legislature exempts all services that are currently non-taxed, state and local government revenues will not be affected. If the legislature fails to exempt one or more services that are currently non-taxed, state and local revenues will increase.
The opponents contend that this financial impact summary is defective because while the Financial Impact Estimating Conference's report shows that the impact could range from $0 to $19 billion, the financial impact statement does not provide any specific detail to the voters. However, we do not believe that this type of "omission" requires this Court to hold that the statement is invalid.
Neither the constitution nor the statutes mandate that the Conference provide a financial range where the amount cannot be determined. Instead, section 100.371(6)(a) simply states that "the Financial *486 Impact Estimating Conference shall complete an analysis and financial impact statement to be placed on the ballot of the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative." Further, subsection (6)(b)(3) provides that "[n]othing in this subsection prohibits the Financial Impact Estimating Conference from setting forth a range of potential impacts in the financial impact statement." Id. (emphasis added). In the cases where this Court found the financial impact statement to be defective, it was because the statement did not comply with these specific requirements. See, e.g., Advisory Op. to Att'y Gen. re Repeal of High Speed Rail Amendment, 880 So.2d 628, 629 (Fla.2004) (rejecting the proposed financial impact statement because certain provisions were not expressed in terms of the "probable financial impact" and because the statement went beyond addressing "revenues or costs to state or local governments"); In re Advisory Op. to the Att'y Gen. re Pub. Prot. from Repeated Medical Malpractice, 880 So.2d 686, 687 (Fla.2004) (rejecting the proposed financial impact statement because phrase "range of potential impacts" in section 100.371(6)(b)(3) must relate to the phrase "probable financial impact" set forth in the constitution and the proposed statement included potential impacts beyond monetary estimates); In re Advisory Op. to the Att'y Gen. re Authorizes Miami-Dade & Broward County Voters to Approve Slot Machines in Parimutuel Facilities, 880 So.2d 689 (Fla.2004) (same). The statement here does not involve the same type of problems. Moreover, there is no statutory requirement for the statement to speculate on the range of monetary impact an amendment will have  instead, the statute specifically states that this is discretionary. Accordingly, we conclude that the proposed financial impact statement at issue does not violate Florida law.
Case No. SC05-1565: Initiative Requiring Legislative Determination That Sales Tax Exemptions Serve a Public Purpose
The full text of the second proposed amendment, case no. SC05-1565 states:
BE IT ENACTED BY THE PEOPLE OF FLORIDA THAT:
Article III of the Florida Constitution is hereby amended to add the following as Section 20:
Periodic legislative review of sales tax exemptions.
Except for the current exemptions provided for: food; prescription drugs; health services; and residential rent, electricity and heating fuel, the legislature shall, prior to July 1, 2008, and prior to the first day of July for each tenth year thereafter, review all exemptions from the sales tax existing on or created subsequent to the effective date of this amendment. The Legislature shall reenact and continue only those exemptions determined to advance or serve a public purpose. Those exemptions not reenacted and continued shall lapse and end effective January 1 subsequent to the July 1 deadline enumerated in this section for the review of sales tax exemptions.
The ballot title for the second proposed amendment is: "Initiative requiring legislative determination that sales tax exemptions serve a public purpose." The summary for the proposed amendment states:
The legislature shall periodically review all sales tax exemptions except those currently provided for: food; prescription drugs; health services; and residential rent, electricity and heating fuel. After such review, the legislature shall reenact and continue only those exemptions that advance or serve a legislatively *487 determined public purpose. Sales tax exemptions not reenacted and continued by the legislature shall be eliminated.

ISSUE 1: SINGLE-SUBJECT RULE

ANALYSIS
The first issue for the Court to address is whether this second initiative violates the single-subject requirement.

A. Logrolling
As addressed above, in order to determine whether an initiative engages in logrolling, courts employ the "[u]nity of object and plan" test, looking to see whether a proposed amendment "may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme." Fairness Initiative, 880 So.2d at 634 (quoting Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984)).
The opponents raise many of the same arguments in this challenge as they raised in the case above. However, for essentially the same reasons we have discussed in treating the first proposed amendment we reject most of the arguments of the opponents. Once again we conclude that the essence of the amendment is captured in the ballot title providing for "legislative determination that sales tax exemptions serve a public purpose."
The opponents assert that the present initiative engages in logrolling because: (1) it forces a voter who wants to end the sale tax exemptions on one or more goods to acquiesce in ending the exemptions on other goods; and (2) it forces a voter to accept a constitutional exemption of certain goods (like food and health services) in exchange for reviewing the exemptions on other goods. We disagree. As addressed in our prior decision concerning this general matter, this Court has already recognized that an initiative setting only one individual goal (setting up a system to review sales tax exemptions, creating a new sales tax, or limiting the Legislature's ability to create sales tax exemptions), may be the permissible subject of a constitutional amendment. Fairness Initiative, 880 So.2d at 635. The proposal at issue only carries forth the scheme of the first proposal in requiring periodic consideration and review by the Legislature of sales tax exemptions and the public policy underlying those exemptions.
The opponents also contend that the initiative does not cure the problem found in Fairness Initiative, 880 So.2d at 634, since the proposed amendment still contains two disparate subjects: (1) it creates a scheme for the Legislature to review existing exemptions to the sales tax; and (2) it limits the Legislature's ability to create exemptions by requiring lawmakers to determine a public purpose before re-enacting an exemption. However, as we have pointed out above, the proposed amendment has a oneness in purpose and subject in mandating legislative review of the related issues of the sales tax and exemptions thereto. It does not, however, mandate particular outcomes other than the fact that exemptions serve a public purpose, an exercise common in the legislative process. Hence, it leaves to the Legislature the ultimate policy choice, and does not force the voter to choose among exemptions.

B. Substantially Altering the Function of Multiple Branches of Government
Next, the opponents contend that the second initiative substantially alters or performs the functions of multiple branches of government and causes multiple cataclysmic changes in state government. See generally Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d at 495. However, we have considered and *488 rejected these arguments in our consideration of case no. SC05-1564 (Sales Tax Extension to Services). We again conclude that this amendment is principally directed to the legislative branch with only incidental effects on the executive and judicial branches. As we did with the first proposal, we find no single-subject violation.

ISSUE 2: BALLOT TITLE AND SUMMARY

ANALYSIS
The second issue raised is whether the ballot title and summary for this second proposal provides fair notice to the voters, i.e., (1) whether "the ballot title and summary . . . fairly inform the voter of the chief purpose of the amendment"; and (2) "whether the language of the title and summary, as written, misleads the public." Fairness Initiative, 880 So.2d at 635-36 (quoting Right to Treatment & Rehab., 818 So.2d at 497, and Right of Citizens to Choose, 705 So.2d at 566).
In this case, the ballot title for the proposed amendment is "Initiative requiring legislative determination that sales tax exemptions serve a public purpose." The summary for the proposed amendment is as follows:
The legislature shall periodically review all sales tax exemptions except those currently provided for: food; prescription drugs; health services; and residential rent, electricity and heating fuel. After such review, the legislature shall reenact and continue only those exemptions that advance or serve a legislatively determined public purpose. Sales tax exemptions not reenacted and continued by the legislature shall be eliminated.
The opponents raise numerous grounds to support their contention that the ballot title and summary are defective.
First, they contend that the summary misleads voters into believing that "health services" are protected from automatic taxation because the ballot summary asserts that "[t]he legislature shall periodically review all sales tax exemptions except those currently provided for: food; prescription drugs; health services; and residential rent, electricity and heating fuel." The opponents point out that, despite this language, chapter 212 does not expressly exclude health care servicesin fact, Florida law presently does not exempt health services from the sales tax at all because those services would not otherwise be subject to the sales tax.
It appears the opponents base this argument on a misreading of the proposed amendment: because chapter 212 does not provide an exemption for health services (or any services), the summary is misleading because it claims to protect an exemption which does not exist. We do not believe that this argument makes the summary misleadingservices are not currently taxed and thus health services are not currently taxed. We conclude the language of the summary on this point follows the proposed constitutional amendment very closely and is not misleading.
However, the opponents to this proposal also contend that the deadlines discussed above in case no. SC05-1564 impact the ballot title and summary of this amendment because under the timeframe explicitly required under the proposal, there can be no initial legislative review of the sales tax and exemptions, which appears to be the primary purpose of the initiative.
As noted above, the initiative itself requires that, prior to July 1, 2008, the Legislature shall review all exemptions from the sales tax and shall reenact and continue only those exemptions determined to advance or serve a public purpose. Any exemptions that are not reenacted shall *489 lapse. Based on the express terms of the initiative, since the initiative cannot appear on the ballot until November 2008, the time in which the Legislature has to reenact any exemptions will have run. Accordingly, there will be no time for any legislative review as promised in the summary, which, as both parties agree, is a key component of the initiative.
As discussed above, FAIR attempts to circumvent this problem, claiming that the amendment is not self-executing because its primary purpose cannot be achieved within the timeframes. For the reasons expressed above, we have rejected that contention. For those same reasons, we conclude the ballot summary is misleading and confusing because it does not resolve or explain how the self-operative deadlines imposed by the proposal can be reconciled with the date when this proposal will be submitted for approval. As with the first proposal, we find no other flaw in the ballot title and summary.

ISSUE 3: Financial Impact Statement

ANALYSIS
In this case, the proposed financial impact statement provides as follows:
Although the value of sales tax exemptions subject to legislative review is substantial, the probable impact of the amendment on state and local government revenues is dependent upon future actions of the legislature and cannot be determined. If the legislature reenacts and continues all existing exemptions, state and local government revenues will not be affected. If the legislature does not reenact one or more exemptions, state and local government revenues will increase.
The opponents contend that this financial impact summary is defective because while the Conference's report shows that the impact could range from $0 to $8 billion, the financial impact statement does not provide this relevant piece of information in the statement that will be provided to the voters. For the same reasons as addressed in case no. SC05-1833 (Sales Tax Extension), see supra pp. 484-85, we do not believe that this type of "omission" requires this Court to hold that the statement is invalid. Neither the constitution nor the statutes mandate that the Conference provide a specific financial range where the amount cannot be determined. Moreover, we do not see any other reason why the Court should find that the financial impact statement does not comply with the constitution or with Florida law.
Case No. SC05-1566: Initiative Directing Manner by Which Sales Tax Exemptions Are Granted by the Legislature

STATEMENT OF THE CASE AND FACTS
The ballot title for the third proposed amendment is "Initiative directing manner by which sales tax exemptions are granted by the legislature." The summary for the proposed amendment states:
Each law granting an exemption to the sales tax shall contain a legislative determination that such exemption advances or serves a public purpose and shall contain the single subject of a single exemption.
The full text of the proposed amendment states:
BE IT ENACTED BY THE PEOPLE OF FLORIDA THAT:
Article III of the Florida Constitution is hereby amended to add the following as Section 21:
Laws creating sales tax exemptions.
Each law creating or reenacting a sales tax exemption shall contain the single subject matter of a single exemption and shall contain a factual statement of the *490 public purpose advanced or served by the exemption.
On September 1, 2005, the Attorney General petitioned this Court for a written opinion as to the validity of this initiative petition circulated pursuant to article XI, section 3, Florida Constitution.
On October 6, 2005, pursuant to section 100.371(6)(a), Florida Statutes (2005), the Financial Impact Estimating Conference forwarded to the Attorney General a financial impact statement on the initiative petition. The Attorney General then filed a new petition, requesting this Court's opinion as to whether the financial impact statement as prepared is in accordance with section 100.371, Florida Statutes.

ISSUE 1: Single Subject

ANALYSIS
In the final initiative proposed by FAIR, the opponents to the other proposals do not assert that there are any problems with this initiative. However, the Court must still review the initiative to determine whether the initiative complies with the single-subject requirement. The proposed amendment seeks to amend the Florida Constitution to add the following:
Laws creating sales tax exemptions.
Each law creating or reenacting a sales tax exemption shall contain the single subject matter of a single exemption and shall contain a factual statement of the public purpose advanced or served by the exemption.

A. Logrolling
As addressed above, in order to determine whether an initiative engages in logrolling, courts employ the "[u]nity of object and plan" test, looking to see whether a proposed amendment "may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme." Fairness Initiative, 880 So.2d at 634 (quoting Fine v. Firestone, 448 So.2d at 990). First, the initiative simply mandates that when the Legislature creates or reenacts a sales tax exemption, it must also contain a factual statement regarding the public purpose of the exemption. Accordingly, it does not engage in the same logrolling as addressed in Fairness Initiative, 880 So.2d at 633-34. This initiative does not create a new sales tax and does not set up a scheme for the Legislature to review existing exemptions to the sales tax. Instead, it addresses only a limitation on the Legislature's ability to create or continue exemptions and exclusions from the sales tax. In fact, as noted above, in Fairness Initiative, 880 So.2d at 635, this Court implicitly recognized that if an initiative contained only one of the goals that related to the sales tax, it could be the "permissible subject of a constitutional amendment under the initiative process." In this case, we conclude that this proposed amendment properly addresses only one goal: limiting the Legislature's ability to create or continue sales tax exemptions.

B. Substantially Altering the Function of Multiple Branches of Government
Next, the Court must ensure that the initiative does not substantially alter or perform the functions of multiple branches of government and causes multiple cataclysmic changes in state government. See generally Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d at 495. Again, for the same reasons discussed above, we conclude this initiative does not violate this principle. Because this amendment involves a single subject and would chiefly impact only one branch, we conclude that there is no single-subject violation.

*491 ISSUE 2: Ballot Title and Summary

ANALYSIS
The second issue which must be addressed is whether the ballot title and summary provides fair notice to the voters through the two-part test: (1) whether "the ballot title and summary . . . fairly inform the voter of the chief purpose of the amendment"; and (2) "whether the language of the title and summary, as written, misleads the public." Fairness Initiative, 880 So.2d at 635-36 (quoting Right to Treatment & Rehab., 818 So.2d at 497, and Right of Citizens to Choose, 705 So.2d at 566). The ballot title for the proposed amendment is "Initiative Directing Manner by Which Sales Tax Exemptions are Granted by the Legislature." The summary for the proposed amendment states:
Each law granting an exemption to the sales tax shall contain a legislative determination that such exemption advances or serves a public purpose and shall contain the single subject of a single exemption.
Again, and unlike the objections raised to the first two proposals, even the opponents do not allege that this initiative has any defects in regard to the ballot summary and title.
The summary closely follows the language of the full initiative, informing the voter of the requirements of the proposed amendment: (1) that each law granting a sales tax exemption must contain a legislative statement that the exemption serves a public purpose; and (2) that each law addressing this issue shall contain the single subject of a single exemption. The title also appears to fairly inform the voter and does not have any misleading information. Importantly, this provision is not tied to or affected by the specific deadlines contemplated by the first two proposals. Hence, we approve the ballot title and summary.

ISSUE 3: FINANCIAL IMPACT STATEMENT

ANALYSIS
Finally, this Court must determine whether the financial impact statement complies with the requirements provided in the Florida Constitution and the statute. In this case, the proposed financial impact statement provides as follows:
The amendment will not have an impact on state and local government revenues or expenses.
Section 100.371(6), Florida Statutes (2005), simply requires that "the Financial Impact Estimating Conference shall complete an analysis and financial impact statement to be placed on the ballot of the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative." Further, subsection (6)(b)(3) provides that "[n]othing in this subsection prohibits the Financial Impact Estimating Conference from setting forth a range of potential impacts in the financial impact statement." Id. (emphasis added). In the cases where this Court found the financial impact statement to be defective, it was because the statement did not comply with these specific requirements. See, e.g., Repeal Of High Speed Rail Amendment, 880 So.2d at 628; Pub. Prot. from Repeated Medical Malpractice, 880 So.2d at 686; Authorizes Miami-Dade & Broward County Voters To Approve Slot Machines In Parimutuel Facilities, 880 So.2d at 689. The statement here does not involve the same type of problems. Accordingly, we conclude the proposed financial impact statement at issue does not violate Florida law.

CONCLUSION
In accordance with the discussion set out above, we find no single-subject violation in any of the three proposals submitted *492 (case nos. SC05-1564, SC05-1565 and SC05-1566). In the first and second cases (case nos. SC05-1564 and SC05-1565), we find the only flaw in the ballot summaries to consist of the confusion created by the conflicting deadlines provided in the proposals. This flaw, however, prevents us from approving placement on the ballot for these two proposals. In the third case (case no. SC05-1566), we find no single-subject or ballot summary flaw and we approve the placement of this proposal on the ballot. We find no flaw in the financial impact statement submitted in all three cases (case nos. SC05-1833, SC05-1834, and SC05-1835), and we approve those statements.
It is so ordered.
LEWIS, C.J., and PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion.
WELLS, J., concurring in part and dissenting in part.
I concur that the initiative and ballot summary pertaining to case SC05-1566 (Initiative Directing Manner) can be approved. For the following reasons, though, I dissent from approving the other two initiatives.
Though I dissent for the reasons stated in this opinion, I do want to express my respect and appreciation for the dedication of former Florida Senate President John MacKay, who works tirelessly on these state taxation issues. We all benefit from his dedication. However, I believe that the problems I find to be inherent in these proposed initiatives demonstrate the wisdom of the drafters of Florida's Constitution in providing for the Taxation and Budget Reform Commission. Art. XI, § 6, Fla. Const. It is through this commission that orderly and effective tax reform can and should emanate. It is in this commission that tax issues can be deliberated, and clear and effective resolution of those issues have their best chance of being created.
As the majority recognizes, in 2004, this Court considered and rejected for ballot placement a citizen's initiative previously prepared by Floridians Against Inequities in Rates (FAIR) in Advisory Opinion to the Attorney General re Fairness Initiative Requiring Legislative Determination that Sale Tax Exemptions & Exclusions Serve a Public Purpose ("Fairness Initiative"), 880 So.2d 630 (Fla.2004). Specifically, the Court found that the initiative violated the single-subject rule because it contained three disparate subjects: "(1) a scheme for the Legislature to review existing exemptions to the sales tax under chapter 212; (2) the creation of a sales tax on services that currently does not exist; and (3) limitations on the Legislature's ability to create or continue exemptions and exclusions from the sales tax." Fairness Initiative, 880 So.2d at 634. The Court further explained:
While all of these three goals arguably relate to sales taxes, and any one of these three goals might be the permissible subject of a constitutional amendment under the initiative process, we conclude that together they constitute impermissible logrolling and violate the single-subject requirement of article XI, section 3, of the Florida Constitution because of the substantial, yet disparate, impact they may have. A voter may support requiring the Legislature to periodically review tax exemptions on the sale of certain goods, but oppose the actual creation of a broad sales tax on undefined services that are currently excluded from the sales tax. This initiative requires the voter to "choose all or *493 nothing" among the three apparent effects of the amendment.
Id. at 635. Accordingly, the Court held that the proposed amendment failed to comply with the legal requirements. I do not believe that these problems have been remedied by the current proposals, which in my opinion unsuccessfully attempt to break up some of the subject matter.
In the first case before the Court, Extending Sales Tax to Services, the initiative clearly creates a sales tax on services, a scheme of taxation that currently does not exist. However, it also includes additional subjects because it also provides for a scheme for legislative review to determine tax exemptions, limits the Legislature's ability to create tax exemptions by mandating that the Legislature first find an exemption serves a public purpose, and then requires the Legislature to undertake this task in the manner provided in an unspecified edition of the North American Industry Classification System code published by the United States Census Bureau.
Clearly, creating a tax is one subject. Authorizing exemptions from a tax is another subject. To compound this problem, neither "public purpose" nor "services" is defined. This is a particular problem here because the initiative creates a heretofore nonexistent service tax by the unprecedented method of the tax coming into existence by the Legislature not acting. Pursuant to this amendment, undefined services which are not presently taxed will become taxed unless the Legislature takes affirmative action to pass an exemption for a particular service by a certain date. I do not conclude that the revised initiative now before us has solved the fundamental problem that caused us to previously reject the proposed amendment. Where a tax on services is to be created by the unorthodox method of a constitutionally required tax imposed if there is no legislative action, it appears to me that the creation of the tax and the authorization of exemptions on a special basis are separate subjects.
In addition, I believe that there is a serious concern as to whether the initiative's summary misleads the public. First, the proposed initiative does not operate as it was expressed and as it was intended, thus making it misleading. Under the express terms of the amendment, the Legislature must review all exemptions to the service tax by a date certain and if it fails to exempt such a service, then the constitutionally mandated services tax will apply to that service.[1] Although the proponents conceded during oral argument that they intended the Legislature to reconsider these determinations at subsequent sessions, there is no provision within the proposed amendment for the Legislature to readdress these determinations at a later date. Thus, because this proposed initiative will amend the Constitution and the proposed amendment does not provide for such an opportunity, the amendment will work contrary to its intent, prohibiting the Legislature from ever reviewing such determinations again.[2] However, the public *494 is not informed as to this serious consequence.
Another objection I have to the summary is that the summary does not state in straightforward language that the initiative creates a tax on services which have heretofore been exempt from the sales tax. I believe that the summary will lead voters to mistakenly believe that services are presently subject to the sales tax and that voting for the initiative mandates only a review by the Legislature to determine whether exemptions from a present tax serve a public purpose. I believe it is reasonable to conclude that many voters will not gather from this summary that a vote in favor of this initiative will be a vote to enact the services tax itself.
I believe that the other initiative petition before this Court, Sales Tax Public Purpose Determination, suffers from many of the same problems, as well as additional issues. First, this proposed amendment provides automatic exemptions for a few areas and then requires a review of all exemptions as to all remaining areas and allows exemptions only for those which advance or serve a public purpose. In other words, a voter will have to keep all of the present exemptions in order to have the other exemptions reviewed on a public-purpose basis. This proposed amendment contains two disparate subjects: (1) it creates a scheme for the Legislature to review existing exemptions to the sales tax every ten years; and (2) it limits the Legislature's ability to create exemptions by requiring lawmakers to determine a public purpose before re-enacting an exemption. Moreover, the proposed amendment also creates a tax on items not currently taxed. Specifically, even if the other initiatives are not approved by the voters, under the current initiative alone, the Legislature is both required to review all sales tax exemptions and if they cannot determine a public purpose for the amendment, the exemption will end, thus creating a new sales tax on the item which was previously exempt. Accordingly, I do not believe that the initiative can pass the single-subject requirement.
Moreover, this initiative has one additional problem relating to its summary. Specifically, the summary states that "[t]he legislature shall periodically review all sales tax exemptions except those currently provided for: food; prescription drugs; health services; and residential rent, electricity and heating fuel," misleading voters into believing that "health services" are protected from automatic taxation. Despite this language in the summary, it is unclear whether the proposed initiative at issue will continue to have such an effect when considering the effect of the other initiatives which have been proposed by FAIR, including the initiative Extending Sales Tax to Services. In Extending Sales Tax to Services, the amendment will impose a sales tax on all nontaxed services without any further legislative action unless the Legislature has specifically exempted such services. There is no exception provided for health services. However, under the current initiative (Sales Tax Public Purpose Determination), the Legislature will not be required to review an exemption for health services, but pursuant to Extending Sales Tax to Services, all services which have no legislative finding relating to a public purpose to the exemption will be taxed. Thus, based on the clear, unambiguous language of both amendments, if both initiatives are approved by the voters, health services could be automatically taxed pursuant to a constitutional amendment, despite the fact that it does not appear that *495 the sponsor intended this result.[3] If this reading is correct, this error would mislead the voter into thinking that voting for this proposal would protect health care services against taxation when in fact it does not, and could have the complete opposite effect. Hence, the summary may not fairly inform the voter of its true impact. I do not agree with the majority opinion at pages 487-88 that the inclusion of "health services" in this amendment does not make the summary misleading. I think it does because it sails under the false colors that this amendment is going to maintain an exemption on otherwise taxed health services.
For the above reasons, I respectfully dissent and believe that two out of the three initiatives proposed have serious defects and hence should not be approved for placement on the ballot.
NOTES
[1] During oral argument, the proponents asserted that they will amend the proposed amendment slightly to correct the significant problem with the date-specific deadline. However, for the reasons addressed here, I believe that more substantive changes are also necessary to ensure that the proposed amendment, if passed by the voters, will operate as intended.
[2] This Court does not have the power to rewrite the amendment or construe it in a manner contrary to its plain and ordinary meaning. Accordingly, this is not an issue that can be resolved by the judiciary after the amendment is passed as it is currently worded.
[3] To prevent this result, the Legislature would need to take specific action which is not mandated by the initiative at issue.