24 So.3d 1198 (2009)
ADVISORY OPINION TO The ATTORNEY GENERAL RE STANDARDS FOR ESTABLISHING LEGISLATIVE DISTRICT BOUNDARIES (FIS).
Advisory Opinion to the Attorney General re Standards for Legislature to Follow in Congressional Redistricting (FIS).
Nos. SC08-1163, SC08-1165.
Supreme Court of Florida.
December 17, 2009.
Bill McCollum, Attorney General, Louis F. Hubener, Solicitor General, Tallahassee, FL, for Petitioner.
Barry Richard and M. Hope Keating of Greenberg Traurig, P.A., Tallahassee, FL, Jon L. Mills of Boies, Schiller and Flexner, LLP, Miami, FL, and Timothy McLendon, Gainesville, FL, Mark Herron of Messer, Caparello and Self, P.A., Tallahassee, FL, and E. Thom Rumberger of Rumberger, Kirk and Caldwell, P.A., Tallahassee, FL, for FairDistrictsFlorida.org, Sponsor.
Jason Vail, General Counsel, Florida Senate, and Jeremiah M. Hawkes, General Counsel, Florida House of Representatives, Tallahassee, FL, on behalf of The Florida Legislature, as Opponents.
*1199 PER CURIAM.
On January 29, 2009, this Court approved for placement on the ballot two proposed amendments to the Florida Constitution detailing additional guidelines that the Florida Legislature must follow when it conducts legislative and congressional reapportionment. See Advisory Op. to Att'y Gen. re Standards for Establishing Legislative Dist. Boundaries, 2 So.3d 175, 191 (Fla.2009). While this Court considered the validity of the petitions, the Attorney General also requested that the Court review the corresponding financial impact statements to evaluate their compliance with section 100.371, Florida Statutes (2008). See Advisory Op. to Att'y Gen. re Standards for Establishing Legislative Dist. Boundaries (FIS), 2 So.3d 161, 162 (Fla.2009). We remanded the statements to the Financial Impact Estimating Conference (FIEC) to be redrafted because the statements in their then-current form did not satisfy the statutory requirements. See id. at 166.
On February 18, 2009, the Attorney General filed revised financial impact statements with this Court and requested an opinion with regard to whether the statements comply with section 100.371, Florida Statutes (2008). As with the previous submissions, the revised statements are identical:
The fiscal impact cannot be determined precisely. State government and state courts may incur additional costs if litigation increases beyond the number or complexity of cases which would have occurred in the amendment's absence.
We possess jurisdiction to consider the validity of financial impact statements pursuant to article IV, section 10, and article V, section 3(b)(10) of the Florida Constitution.

ANALYSIS

Applicable Law
Article XI, section 5 of the Florida Constitution addresses financial impact statements and provides in relevant part:
(c) The legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by the initiative pursuant to section 3.
Section 100.371(5), Florida Statutes (2008), addresses financial impact statements and provides:
(5)(a) Within 45 days after receipt of a proposed revision or amendment to the State Constitution by initiative petition from the Secretary of State, the Financial Impact Estimating Conference shall complete an analysis and financial impact statement to be placed on the ballot of the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative. The Financial Impact Estimating Conference shall submit the financial impact statement to the Attorney General and Secretary of State.
....
(c)....
2. Principals of the Financial Impact Estimating Conference shall reach a consensus or majority concurrence on a clear and unambiguous financial impact statement, no more than 75 words in length, and immediately submit the statement to the Attorney General. Nothing in this subsection prohibits the Financial Impact Estimating Conference from setting forth a range of potential impacts in the financial impact statement....

*1200 3. If the members of the Financial Impact Estimating Conference are unable to agree on the statement required by this subsection, or if the Supreme Court has rejected the initial submission by the Financial Impact Estimating Conference and no redraft has been approved by the Supreme Court by 5 p.m. on the 75th day before the election, the following statement shall appear on the ballot pursuant to s. 101.161(1): "The financial impact of this measure, if any, cannot be reasonably determined at this time."
....
(e)1. Any financial impact statement that the Supreme Court finds not to be in accordance with this subsection shall be remanded solely to the Financial Impact Estimating Conference for redrafting, provided the court's advisory opinion is rendered at least 75 days before the election at which the question of ratifying the amendment will be presented. The Financial Impact Estimating Conference shall prepare and adopt a revised financial impact statement no later than 5 p.m. on the 15th day after the date of the court's opinion.
In our opinion that rejected the original financial impact statements, we explained our duty with regard to the review of such statements:
[W]hen we review a financial impact statement for compliance with section 100.371, we address "whether the statement is clear, unambiguous, consists of no more than seventy-five words, and is limited to addressing the estimated increase or decrease in any revenues or costs to the state or local governments." Advisory Op. to Att'y Gen. re: Funding of Embryonic Stem Cell Research, 959 So.2d 195, 202 (Fla.2007). Because the financial impact statement will be printed on the ballot, the same due process concerns that inure to the title and summary of a proposed amendment are also applicable to the financial impact statement. See Askew v. Firestone, 421 So.2d 151, 155 (Fla.1982) ("[T]he voter should not be misled.... What the law requires is that the ballot be fair and advise the voter sufficiently to enable him intelligently to cast his ballot." (alteration in original) (quoting Hill v. Milander, 72 So.2d 796, 798 (Fla.1954))). Accordingly, we have an obligation to review the ballot as a whole to ensure that no part of the ballotwhich includes the financial impact statement is misleading.
.... The rationale behind such a review is both clear and logical. It would make little sense to require that a proposed amendment title and summary not be misleading to voters, but then allow a financial impact statement that contains inaccurate or completely speculative predictions of potential financial impact to be placed on the ballot.
Legislative District Boundaries (FIS), 2 So.3d at 164.

Application of Law
We conclude that the current statements satisfy the requirements of section 100.371. The statements consist of thirty-four words each, which falls well within the seventy-five word limit mandated by the statute. See § 100.371(5)(c)2., Fla. Stat. (2008). In addition, the current statements do not contain the vague and speculative reference to "millions of dollars" in increased costs that this Court rejected in the original financial impact statements. See Legislative District Boundaries (FIS), 2 So.3d at 165 n. 3; see also Advisory Op. to Att'y Gen. re Referenda Required for Adoption & Amendment of Local Gov't Comprehensive Land Use Plans, 992 So.2d 190, 193 (Fla.2008) (rejecting statement *1201 which provided a financial impact of "millions of dollars" because under this language, "the cost of implementation of the amendment could be anywhere from $2 million to $999 million," and concluding that such vague language may cause citizens to vote against the amendment "solely because of fear generated by the misleading statement concerning the potential economic consequences of the amendment").
Moreover, the statements do not include any nonmonetary impacts or financial impacts beyond the revenues or costs to state or local governments, the inclusion of which has led to the rejection of impact statements in the past. See, e.g., Advisory Op. to Att'y Gen. re Authorizes Miami-Dade & Broward County Voters to Approve Slot Machines in Parimutuel Facilities, 880 So.2d 689 (Fla.2004); Advisory Op. to Att'y Gen. re Public Protection from Repeated Medical Malpractice, 880 So.2d 686 (Fla.2004); Advisory Op. to Att'y Gen. re Repeal of High Speed Rail Amendment, 880 So.2d 624 (Fla.2004).
Instead, the statements commence with the conclusion that the impact of the amendments cannot be precisely determined, a conclusion which is clearly permitted under the statute. See § 100.371(5)(c)3., Fla. Stat. (2008) (allowing an FIS to provide that "[t]he financial impact of this measure, if any, cannot be reasonably determined at this time"). The statements then follow with a second, conditional sentenceif litigation increases beyond the number or complexity of cases which would have occurred in the amendment's absence, then additional costs may be incurred. FairDistrictsFlorida.org, the sponsor of the proposed constitutional amendments, contends that this conditional second sentence constitutes impermissible speculation which may not appear in an estimate of financial impact. It is true that we have previously condemned the use of speculation in prior financial impact statements. Indeed, we rejected the original financial impact statements in part because the FIEC's attempt to establish a litigation-cost baseline from which to measure any alleged increased cost of the proposed amendments was deemed to be "dubious and highly speculative." Legislative District Boundaries (FIS), 2 So.3d at 165-66.
Despite this condemnation, this Court has nonetheless previously approved financial impact statements that contain conditional phrases. Most notably, in Advisory Opinion to the Attorney General re Extending Existing Sales Tax to Non-Taxed Services Where Exclusion Fails to Serve Public Purpose, 953 So.2d 471 (Fla.2007), we held that two financial impact statements complied with Florida law where the statements explained that the probable impact of two proposed amendments was dependent on future action by the Legislature and, therefore, could not be determined. As in the present case, the impact statements contained conditional language:
Although state and local governments could potentially receive substantial revenue from non-taxed services subject to legislative review, the probable impact of the amendment is dependent upon future action of the legislature and cannot be determined. If the legislature exempts all services that are currently non-taxed, state and local government revenues will not be affected. If the legislature fails to exempt one or more services that are currently non-taxed, state and local revenues will increase.
. . . .
Although the value of sales tax exemptions subject to legislative review is substantial, the probable impact of the amendment on state and local government revenues is dependent upon future *1202 actions of the legislature and cannot be determined. If the legislature reenacts and continues all existing exemptions, state and local government revenues will not be affected. If the legislature does not reenact one or more exemptions, state and local government revenues will increase.
Id. at 485, 489. Thus, prior precedent compels a conclusion that the conditional phrase in the second sentence of the financial impact statements is not impermissible and does not render the statements noncompliant with section 100.371.
Although we do not reject the statements as revised, it may become necessary to reconsider whether to allow financial impact statements that contain conditional phrases on the ballot in light of our constitutional duty to protect and preserve the integrity of the amendment process:
[F]inancial impact statements [should] not devolve into a tool used to manipulate the public based solely upon whether the entity empowered and entrusted with preparing the statements favors or disfavors a proposal. Scare tactics and vague, unsupported predictions of financial disaster have no place in this constitutional-amendment process, and any predictions of financial impact must be grounded in fact, not partisan ideology. Otherwise, the core purpose of financial impact statements (i.e., to inform voters so that an educated decision may be made with regard to a proposed amendment) would be completely defeated.
Legislative District Boundaries (FIS), 2 So.3d at 165; see also Repeated Medical Malpractice, 880 So.2d at 687 (Lewis, J., specially concurring) (expressing concern that broad interpretation of law governing financial impact could reduce statements into "a vehicle for any manner of content and language, including politicized statements designed as an attempt to sway the voters of this state, as long as those statements are clear and unambiguous").

CONCLUSION
Based upon prior precedent from this Court, we hold that the financial impact statements comply with section 100.371, Florida Statutes (2008), and may be placed on the ballot.
It is so ordered.
LEWIS, LABARGA, and PERRY, JJ., concur.
CANADY and POLSTON, JJ., concur in result only.
QUINCE, C.J., dissents with an opinion.
PARIENTE, J., recused.
QUINCE, C.J., dissenting.
I dissent because I do not believe that this financial impact statement complies with the spirit and purpose of these statements. A financial impact statement is intended to give the voters a realistic, and I believe, unbiased statement of what the voter might expect the State or other political subdivision of the State to expend in order to implement the amendment if it should pass. The statement should be neutral and state both sides of the expenditure issue, if there is more than one possibility. The financial impact statement should not be used as a scare tactic to discourage the voter. This financial statement is not a neutral statement of the financial consequences. The other side in this instance is that there may be little or no financial impact beyond what is already experienced when legislative districts are being established. This possible impact could have also been stated as the drafters only used thirty-four of the seventy-five words allowable for financial impact statements.
*1203 I would not allow this statement to be placed on the ballot.