OVERTON, Justice.
The Attorney General has petitioned this Court for review of an initiative proposed by Florida Locally Approved Gaming, Inc. (FLAG) that would amend the Florida Constitution to allow casino gambling in the State of Florida. We have jurisdiction. Art. IV, § 10; art V, § 3(b)(10), Fla. Const. We find that the initiative petition complies with the single-subject requirement in article XI, section 3, of the Florida Constitution and that the ballot title and summary are not misleading. Consequently, we approve the proposed amendment for placement on the ballot.
I. FACTS
On August 12, 1994, the Attorney General of Florida, in accordance with his constitutional and statutory responsibilities, petitioned this Court for an advisory opinion concerning the validity of an initiative petition circulated by FLAG. In his petition, the Attorney General informed the Court that FLAG had failed to obtain the requisite number of verified signatures for placement on the November 1994 ballot.[1] This Court entered an order directing the parties to show cause why the matter should not be dismissed. FLAG’S response to the order to show cause asked for a stay until after the November 1994 election. The response also indicated that, although FLAG had not obtained enough signatures for placement on the ballot, it had obtained a sufficient number of signatures to entitle it to an advisory opinion from this Court under sections 15.21 and 16.061, Florida Statutes (1993),[2] and arti- *1261 ele IV, section 10, Florida Constitution. FLAG’S response also noted that the verified signatures it had collected were valid for four years pursuant to section 100.371(2), Florida Statutes (1993), and that, should it meet all other legal requirements, its proposed amendment could appear on the 1996 ballot.
The ballot title and summary of the proposed amendment read as follows:
Title: FLORIDA LOCALLY APPROVED GAMING
Summary: This amendment authorizes gaming at twenty casinos; authorizes casinos aboard riverboats and in hotels of one thousand rooms or more; determines the number of casinos in individual counties based on the resident population of such counties; provides that gaming shall not be authorized in any county or municipality unless approved by the respective county or municipal governing body; provides for licensing, regulation and taxation of gaming; and provides definitions and an effective date.
The full text of the proposed amendment reads as follows:
Section 16 of Article X is created to read: Section 16. Local Option Gaming.—
(a) Twenty state-regulated, privately owned casinos are hereby authorized. Of such twenty casinos:
(1) All shall be located either aboard riverboats or in hotels;
(2) One casino aboard a riverboat may be located in every county with at least 200,-000 residents, provided that there shall be no more than ten casinos aboard riverboats statewide; and
(3)One casino in a hotel shall be located in every county per each 500,000 residents in each county.
(b) Each county, but only as to the unincorporated area within its boundary, or municipality, by a vote of its governing body, may at any time after the effective date of this section authorize gaming within its jurisdiction as provided by this section.
(e) The following terms shall have the following meanings:
(1) “casino” means a licensed gaming facility aboard a riverboat or located in a hotel.
(2) “gaming” means playing or engaging in, for money or any other thing of value, baccarat, blackjack or twenty-one, craps, keno, poker, roulette, electronic gaming machines, slot machines or such other games of skill or chance as may be authorized by the legislature.
(3) “hotel” means a land-based hotel having at least 1,000 guest rooms.
(4) “riverboat” means a self-propelled, nonstationary excursion vessel which operates regularly within the state and its territorial and adjacent waters.
(d) By general law enacted no later than July 1, 1995, the legislature shall implement this section with legislation to license, regulate and tax gaming.
(e) If any portion of this section is held invalid for any reason, the remaining portion or portions of this section, to the fullest extent possible, shall be severed *1262 from the void portion and be given the fullest possible force and application.
(f) This amendment shall take effect on the date approved by the electors, provided that no casinos shall be authorized to operate before July 1, 1995.
This proposal seeks to amend the state constitution to allow casino gaming under certain qualified and limited circumstances. It provides: (1) an authorization for, and a specific number limitation on, the type of casinos where gaming may occur; and (2) a means by which local governing bodies must authorize certain types of gaming in casinos if the county in which the governing body is located meets the amendment’s minimum population requirements.
Our analysis of the proposed amendment is limited to two legal issues: (1) whether the proposed amendment’s title and summary are “printed in clear and unambiguous language,” section 101.161(1), Florida Statutes (1993);[3] and (2) whether the proposed amendment meets the single subject requirements of article XI, section 3, Florida Constitution. As we have stated in previous opinions, we have no authority to rule on the merits of a proposed amendment. Advisory Op. to the Att’y Gen. re Tax Limitation, 644 So.2d 486, 489 (Fla.1994).
II. BALLOT TITLE AND SUMMARY
“[Sjection 101.161 requires that the ballot title and summary for a proposed constitutional amendment state in clear and unambiguous language the chief purpose of the measure.” Askew v. Firestone, 421 So.2d 151, 154-55 (Fla.1982). We find that the summary for FLAG’S proposed amendment meets this standard. It properly summarizes the chief purpose of the proposed amendment, which is to authorize gaming at a total of twenty casinos. We conclude that the summary does not omit any material information and does not mislead the public with “political rhetoric.” Of In re Adv.Op. to the Att’y Gen. — Save Our Everglades, 636 So.2d 1336, 1341 (Fla.1994).
The Attorney General and others have asserted that the ballot title and summary may be misleading because neither informs the voter of the actual effects of the proposed amendment. For example, the Attorney General notes that subsection (a)(3) of the proposed amendment states that “[o]ne casino in a hotel shall be located in every county per each 500,000 residents in each county.” (Emphasis added.) The Attorney General asserts that this language removes the requirement for local authorization and mandates the placement of casinos in the larger counties. We do not interpret this provision in a manner that would lead to this conclusion. Subsection (a)(3) must be read together with subsection (b), which states that each local governing body must authorize gaming in its jurisdiction. In our view, these provisions mandate local governmental authorization. Without such general authorization, neither hotel nor riverboat casinos are permitted in the jurisdiction of a local governmental entity. This is fully consistent with the proponents’ construction of the amendment at oral argument. The Attorney General also notes that the summary implies that any county that authorizes gaming will be allowed to have a casino whereas the text limits casinos to counties with at least 200,-000 residents. The summary states that the proposed amendment “determines the number of casinos in individual counties based on the resident population of such counties.” This statement describes precisely what the proposed amendment does. If the number of residents of a county is under 200,000, then the “number” of casinos that can be authorized for that county is zero. We do not find this statement to be misleading. Next, the Attorney General asserts that the summary could be misleading when it states that the amendment “provides that gaming shall not *1263 be authorized in any county or municipality unless approved_” (Emphasis added.) The Attorney General argues that nowhere in the text of the amendment is it stated that casinos are expressly prohibited unless they are authorized pursuant to the amendment. We disagree with this conclusion. If the amendment is approved by the voters, only twenty casinos may be authorized throughout the entire state. Once these twenty casinos have been authorized pursuant to general law enacted by the Legislature, no other casinos may be authorized regardless of the vote of any local governing body.
The Governor and the Cabinet have also filed a brief that challenges the ballot title and summary. The Governor and Cabinet assert that the language in the summary concerning the requirement for legislative regulation and taxation of casinos is misleading because it provides that the Legislature must enact general law concerning the licen-sure, regulation, and taxation of casinos by July 1, 1995. They argue that, because the proposed amendment will not appear on the ballot until 1996 at the earliest, the deadline for legislative action will be of no effect. The Governor and Cabinet assert that the deadline is critically important to the voter’s evaluation of the text of the proposed amendment. We disagree. We find that the “critically important” aspect of this portion of the proposed amendment is that the Legislature must implement this provision. It clearly is not intended to be self-executing. Under this provision, the Legislature must enact legislation to license, regulate, and tax casinos and, if the amendment is adopted, it will have to do so within a reasonable time after the proposal’s adoption. The fact that the Legislature will not be able to exercise that authority by the specific date noted in the' proposed amendment does not, in our view, void the amendment. We conclude that, because the summary includes language that clearly informs the voter that gaming will be licensed, regulated, and taxed by legislative enactment, the summary is not misleading on this issue.
III. SINGLE-SUBJECT REQUIREMENT
Article XI, section 3, of the Florida Constitution provides, in relevant part: “The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment ... shall embrace but one subject and matter directly connected therewith.” A proposed amendment meets this test when it “may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test.” City of Coral Gables v. Gray, 154 Fla. 881, 883-84, 19 So.2d 318, 320 (1944).
The Attorney General urges this Court to find that the proposed amendment violates the single-subject requirement in two distinct ways. First, the Attorney General invites this Court to “consider whether the proposed amendment, which requires voters to accept or reject the specified locations at which casinos are authorized, may constitute a form of ‘logrolling’ in that a voter who may favor casinos must accept their location in metropolitan areas even though he or she may favor their location in rural areas.” The Attorney General makes a similar argument concerning voters who may disapprove of hotel gaming while approving the authorization of riverboat gaming. Second, the Attorney General states that the proposed amendment violates the single-subject rule because it “encroaches on the powers of local and state government by substantially preempting the regulatory or land use functions of state and local government.” The Governor and Cabinet echo these assertions in their brief. These assertions are essentially the same arguments raised in Advisory Opinion to the Attorney General re Limited Casinos, 644 So.2d 71 (Fla.1994). We reject these arguments for the same reasons expressed in Limited Casinos.
IV. DEADLINE FOR LEGISLATIVE IMPLEMENTATION
Section (d) of the text of the proposed amendment provides that the Legislature must implement the provisions of the proposed amendment concerning the licensure, regulation, and taxation of gaming by general *1264 law enacted no later than July 1, 1995. As discussed earlier in this opinion, the proposed amendment will not appear on the ballot until 1996 at the earliest. In light of this fact, it appears that the proposed amendment has established an impossible deadline. This is a direct result of the unnecessary use of date-specific deadlines when a more general deadline would suffice. For example, the deadline could have been stated as “within 180 days of the voters’ approval of this amendment,” or language to that effect. Proponents of amendments to the constitution would be well advised to avoid this type of problem in the future. We find that, in the instant case, this deadline for legislative action does not void the proposal because we conclude that it does not affect the substantive provisions of the proposed amendment requiring the Legislature to implement the proposal. The intent is clear that the Legislature must act within a reasonable time. If the Legislature does not act there is a remedy. See Dade County Classroom Teachers Ass’n v. Legislature, 269 So.2d 684 (Fla. 1972). We find that, if adopted, this proposed amendment requires the Legislature to implement this provision within a reasonable time after its adoption.
V. CONCLUSION
We approve the proposed amendment entitled “Florida Locally Approved Gaming” for inclusion on the ballot. As we have stated before, while we find that it meets the constitutional and statutory requirements, our decision should not be construed as a comment on the merits of the proposed amendment.
It is so ordered.
SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
GRIMES, C.J., recused.

. Article XI, section 3, of the Florida Constitution provides that the power to propose an amendment or revision to the state constitution can be invoked only when the proponent has filed with the Secretary of State a petition "signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen.”

. Section 15.21, Florida Statutes (1993), provides:
*1261 The Secretary of State shall immediately submit an initiative petition to the Attorney General if the sponsor has:
(1) Registered as a political committee pursuant to s. 106.03;
(2) Submitted the ballot title, substance, and text of the proposed revision or amendment to the Secretary of State pursuant to ss. 100.371 and 101.161; and
(3) Obtained a letter from the Division of Elections confirming that the sponsor has submitted to the appropriate supervisors for verification, and the supervisors have verified, forms signed and dated equal to 10 percent of the number of electors statewide and in at least one-fourth of the congressional districts required by s. 3, Art. XI of the State Constitution.
Section 16.061, Florida Statutes (1993), provides, in relevant part:
(1) The Attorney General shall, within 30 days after receipt of a proposed revision or amendment to the State Constitution by initiative petition from the Secretary of State, petition the Supreme Court, requesting an advisory opinion regarding the compliance of the text of the proposed amendment or revision with s. 3, Art. XI of the State Constitution and the compliance of the proposed ballot title and substance with s. 101.161. The petition may enumerate any specific factual issues which the Attorney General believes would require a judicial determination.

. Section 101.161(1), Florida Statutes (1993), states, in relevant part:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment ... shall be printed in clear and unambiguous language on the ballot.... The substance of the amendment ... shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.