989 So.2d 1267 (2008)
ELECTED COUNTY MAYOR POLITICAL COMMITTEE, INC., Appellant/Cross-Appellee,
v.
James E. SHIRK, Appellee/Cross-Appellant, and
Buddy Johnson, Supervisor of Elections, Hillsborough County, Florida, in his official capacity, Appellee/Cross-Appellee.
No. 2D08-3882.
District Court of Appeal of Florida, Second District.
September 12, 2008.
*1268 Barry Richard and Glenn T. Burhans, Jr., of Greenberg Traurig, P.A., Tallahassee, for Appellant/Cross-Appellee.
Ronald G. Meyer and Jennifer Blohm of Meyer and Brooks, P.A., Tallahassee, for Appellee/Cross-Appellant James E. Shirk.
Kathy Harris, General Counsel and Chief of Staff, Office of Hillsborough County Supervisor of Elections, Tampa, and Peter Antonacci and Allen Winsor of GrayRobinson, P.A., Tallahassee for Cross-Appellee Buddy Johnson.
PER CURIAM.
In this expedited appeal, codefendant Elected County Mayor Political Committee, Inc. (the Sponsor), challenges a final declaratory judgment removing a proposed amendment to the Hillsborough County Charter from the ballot for the November 2008 general election.[1] The plaintiff below, James Shirk, cross-appeals those portions of the judgment adverse to his position. We affirm the appeal and reverse the cross-appeal. In effect, our decision approves the circuit court's determination to remove the proposed County Charter amendment from the ballot for the upcoming general election.

I. Background
Section 8.03 of the Hillsborough County Charter sets forth the requirements for amending the County Charter by citizen initiative.[2] In April 2006, the Sponsor[3] submitted a copy of a petition to the Supervisor *1269 of Elections for approval to commence a petition drive. The petition contained the following language relevant to this appeal:
CHARTER AMENDMENT PETITION FORM
I am a registered voter of Florida and hereby petition the Supervisor of Elections Hillsborough County to place the following amendment to the Hillsborough County charter on the ballot in the next general election.
[Here followed spaces to be filled in by the voter giving name, address, etc., plus a signature line and space to insert the date of signing.]
BALLOT TITLE: REPLACING THE CURRENT APPOINTED ADMINISTRATOR WITH A NONPARTISAN ELECTED COUNTY MAYOR.
BALLOT SUMMARY: Shall the Hillsborough County Charter be revised to replace the office of an appointed County Administrator for a nonpartisan elected County Mayor; limited to two consecutive terms; specifying executive functions, powers and duties; specifying that the County Mayor will not be a member of the Board.
This amendment will take effect upon passage by the voters.
Following this appeared the full text of the proposed amendment, with strikeouts and underlining that indicate language removed and new language, respectively:
V. Executive Branch: Elected County Mayor Administrator
Section 5.01 Elected County Mayor Administrator
The executive responsibilities and powers of local self government of the county not inconsistent with this Charter shall be assigned to and vested in the an elected County Mayor administrator. The Executive Branch shall be composed of an elected County Mayor, the officers and employees of the administrative offices and executive divisions established by this Charter or created by the Board. One or more assistant county administrators may be appointed by the County Mayor administrator with the advice and consent of the board and shall serve at the pleasure of the County Mayor administrator.

*1270 Section 5.02 Administrative Organization.
All functions of the executive branch shall be allotted among not more than ten divisions or offices. Each division or office shall be administered by a division or office head in accordance with the administrative code. Each division or office shall be appointed by the County Mayor administrator with the advice and consent of the board and shall serve at the pleasure of the County Mayor administrator. Each division or office head shall report to and be responsible to the County Mayor administrator or designated assistant county administrator. The County Mayor administrator may, as allowed by ordinance, require one division or office to undertake a task of another division or office on a temporary basis or until the board provides otherwise.
Section 5.03 County Mayor Administrator; Qualifications; Election; Appointment; Term of Office; Compensation.
(1) The County Mayor administrator shall be a full-time position combining both the duties of ceremonial head and operational head of the county. officer who holds a masters degree in public administration, management, or related field, shall have three years of executive or management experience in public administration. The County Mayor county administrator shall be elected at large and shall not be a member of the board of county commissioners. The term of office shall be for a term of four years not to exceed two consecutive terms and will commence on the second Tuesday of January in the year following the election. appointed by an affirmative vote of not less than five members of the board of county commissioners and may be removed at any time by an affirmative vote of not less than five members of the board or upon the affirmative vote of four (4) members at each of two (2) regular meetings not less than thirteen (13) days apart and no more than twenty-eight (28) days apart. The County Mayor shall be administrator need not be a registered voter and a resident of the county at the time of election to office and throughout the term of office, appointment, but shall within a reasonable time become and remain while in office a resident of the county. The non-partisan primary and general election of the County Mayor shall be held in even number years, beginning with the general election held in the year 2008. The County Mayor administrator shall not engage in any other business or occupation.
(2) The compensation of the Mayor administrator shall be fixed by the board of county commissioners by ordinance at a level which is commensurate with the requirements of the position. The county administrator's compensation, including severance pay, may be set by contract if allowed by and pursuant to the ordinance.
(3) The office of County Mayor administrator shall be deemed vacant if the incumbent: takes up residence outside the county; is by death, illness, resignation, refusal of the Mayor to serve, removal, or other casualty or reason unable to continue to perform the duties of his office; or resigns. Or is removed by the board of county commissioners in the manner prescribed in Section 5.03(1). A vacancy in the office shall be filled in accordance with state law, the same manner as the original appointment. The board of county commissioners may appoint an interim administrator in the case of vacancy, temporary absence, or disability of the present administrator until a successor *1271 has been appointed and qualified or the administrator returns.
Section 5.04 Political Activity by Administrator Duties. The County Mayor shall have the following powers and duties:
(1) Manage the operation of all elements of County government under the jurisdiction of the Board, consistent with the policies, ordinances and resolutions enacted by the Board;
(2) Be responsible for the execution of all contracts and legal documents, but may delegate this authority;
(3) Appoint and dismiss heads of County departments and divisions, which appointments shall be subject to confirmation by the Board;
(4) Assure the faithful execution of all ordinances, resolutions, and orders of the Board and all laws of the State which are subject to enforcement by the County Mayor, or by officers who are subject under this Charter to the Mayor's discretion and supervision;
(5) Present annually at a time designated by the Board, a "State of the County" message setting forth programs and recommendations to the Board;
(6) Supervise the daily activities of employees;
(7) Serve as the chief administrative official of the county, official representative and ceremonial dignitary for the government of Hillsborough County with prerogative to issue proclamations; and
(8) Carry out other powers and duties as required by this Charter or may be prescribed by the Board.
The county administrator shall not hold any political office nor take part in any political activity other than voting.
Section 5.05. Performance Bond
The county administrator shall be required to post a performance bond in accordance with general law.
(Striking and underlining in original.)
The Supervisor of Elections approved the form of the petition on April 11, 2006, and designated it as Charter Amendment Petition 06-5.[4] The six-month petition drive, as provided in the Charter, thus commenced on this date. The Sponsor failed to collect a sufficient number of signatures by the August 2006 date the Supervisor had set to begin printing ballots. Despite missing this deadline, the Sponsor continued collecting signatures on Petition 06-5 and submitted them to the Supervisor before the 2006 general election. On October 11, 2006, the Supervisor certified that the Sponsor had submitted the required number of valid signatures within the six-month time frame and placed it on the ballot for the November 2008 general election, i.e., "the next general election" it could possibly be voted upon.[5]

*1272 II. Proceedings in the Circuit Court

Mr. Shirk, a registered voter who had signed the petition in 2006, commenced the action below seeking a declaratory judgment that the Supervisor of Elections erred in deferring the proposal to the 2008 ballot and an injunction precluding the proposal from appearing on that ballot. The Sponsor sought and was granted intervention as a full party defendant. The parties stipulated that there were no material facts in dispute and agreed to proceed directly to a hearing on a final declaratory judgment, which the circuit court held on August 1, 2008.
At this hearing, Mr. Shirk presented two arguments. First, he argued that the plain language of the first paragraph of Petition 06-5  "in the next general election"  as well as the language in the text of the proposed amendment, section 5.03(1)  "The ... election of the County Mayor shall be held in even number years, beginning with the general election held in the year 2008"  were self-limiting to the 2006 election. Second, he argued that the Ballot Summary was misleading in violation of section 101.161(1), Florida Statutes (2008),[6] because it failed to adequately inform the electorate that the amendment would effectively remove certain powers from the Board of County Commissioners and transfer them to the County Mayor. Counsel for the Supervisor of Elections argued that the Supervisor had done nothing wrong and only fulfilled his ministerial role in determining whether the petition contained valid signatures in sufficient numbers to qualify for placing the proposal on the ballot for the next general election after he had certified them, which, in this case, was 2008.[7] The Sponsor adopted the Supervisor's position and argued further that Mr. Shirk had not shown a clear and conclusive violation of the governing law, *1273 section 101.161(1), and that a commonsense reading of the petition showed that a vote to elect the County Mayor could not be held in 2008, the same election at which the voters would decide whether to amend the County Charter to have a County Mayor.
The circuit court issued its final declaratory judgment later that same day. It provides as follows:
THIS CAUSE having come to be heard before the Court on August 1, 2008 on Plaintiff's Complaint for Declaratory Relief and the Court after reviewing the pleadings, memorandum of law and argument of counsel make[s] the following findings:
1. The language on the Charter Amendment Petition Form stating "... the ballot in the next general election" does not constitute a limitation that would prevent the Charter Amendment from the 2008 Ballot.
2. The language in the Charter Amendment Summary is not misleading.
3. The language in the Charter Amendment Summary[8] stating "... election of the County Mayor shall be held in even number years beginning with the general election held in the year 2008", is a self-imposed limiting condition that cannot occur in 2008.
It is therefore,
ORDER AND ADJUDGED that the Plaintiff's Complaint for Declaratory Relief is granted and the County Mayor Charter Amendment is invalid.
It is from this order that the Sponsor has taken this appeal and Mr. Shirk has cross-appealed.

III. Issues On Appeal
Each of the circuit court's three findings is challenged in the proceedings before us. On appeal, the Sponsor challenges the circuit court's third finding and claims that the final judgment should be reversed because the Charter Amendment is not "clearly and conclusively defective" and the Ballot Title and Summary satisfy section 101.161(1) in that they are clear, unambiguous, and not misleading. In the cross-appeal, Mr. Shirk challenges the circuit court's first two findings and presents two issues: (1) that the circuit court erred in finding that the amendment petition form was not limited to placement on the November 2006 general election ballot, and (2) that the circuit court erred in finding that the Ballot Title and Summary were not misleading by failing to describe the transfer of power anticipated from the Board of County Commissioners to the County Mayor.

IV. Analysis
First, we note that cases discussing proposed state constitutional amendments are applicable to proposed amendments to county charters. See, e.g., Feldman v. City of N. Miami, 973 So.2d 647, 648 (Fla. 3d DCA 2008) (applying the same standard to a proposed county charter amendment as is applied to proposed constitutional amendments); City of Boca Raton v. Palm Beach County, 546 So.2d 116 (Fla. 4th DCA 1989) (same). Second, neither the circuit court nor this court on appeal can "address the merits or wisdom of the proposed amendment." Advisory Opinion to the Atty. Gen. re Extending Existing Sales Tax to Non-Taxed Servs. *1274 Where Exclusion Fails to Serve a Pub. Purpose, 953 So.2d 471, 477 (Fla.2007) (Extending Sales Tax). Our directive is clear:
The legal standard we must follow in determining whether the ballot summary gives fair notice is well established in Florida. A court may not order the removal of a proposed constitutional amendment from the ballot unless the record shows that the proposal is "clearly and conclusively defective."
Sancho v. Smith, 830 So.2d 856, 861 (Fla. 1st DCA 2002) (quoting Askew v. Firestone, 421 So.2d 151, 154 (Fla.1982)). Thus, our standard of review is de novo. See Armstrong v. Harris, 773 So.2d 7 (Fla. 2000); Sancho, 830 So.2d at 861.
In the interest of expediting the resolution of this case, rather than addressing each issue as raised in the appeal and cross-appeal, our discussion will relate to the single overarching question: whether the Ballot Title and Summary satisfy the requirements of section 101.161(1), Florida Statutes (2007). Because no party has challenged the form or substance of the Ballot Title, our analysis focuses on the Ballot Summary alone.
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot.... [T]he substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.... The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1). The supreme court has set forth our guiding principles in analyzing a proposed amendment under this section:
The basic purpose of this provision [in section 101.161(1)] is "to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot."
In conducting its inquiry into the validity of a proposed amendment under section 101.161(1), the Court asks two questions. First, the Court asks whether "the ballot title and summary ... fairly inform the voter of the chief purpose of the amendment." Second, the Court asks "whether the language of the title and summary, as written, misleads the public."
Extending Sales Tax, 953 So.2d at 479 (internal citations omitted).
We hold that the Ballot Summary sufficiently informs the voter that the chief purpose of the amendment is to change Hillsborough County's form of government and redistribute power by replacing the County Administrator with an elected County Mayor. However, we conclude that the Ballot Summary, as written, misleads the public.
The Sponsor used date-specific language in the text of the proposed amendment, expressly providing that "[t]he nonpartisan primary and general election of the County Mayor shall be held in even number years, beginning with the general election held in the year 2008." However, a mayoral race on the ballot for the 2008 general election is an impossibility because the voters of Hillsborough County have yet to decide that the County Charter should be amended to create that elected position.[9]
*1275 The Sponsor urges this court to follow the supreme court's reasoning in Advisory Opinion to the Attorney General re Florida Locally Approved Gaming, 656 So.2d 1259 (Fla.1995) (FLAG). In FLAG, the sponsor had commenced an initiative to amend the Florida Constitution to allow casino gambling within the state. Id. at 1260. The sponsor did not collect the requisite number of signatures in time to place the question on the 1994 ballot, so the Sponsor requested placement on the 1996 ballot. Id. at 1261. The language of the proposed amendment required the legislature to enact certain laws governing the casinos as of July 1, 1995, before any casinos could begin operations. Id. The supreme court reasoned that because the amendment was not "self-executing,"[10] the requirement that the legislature pass the appropriate governing laws by a specific date was not critically important. Id. at 1263. The supreme court found "that the `critically important' aspect of this portion of the proposed amendment is that the Legislature must implement this provision." Id. at 1263. Thus, the impossible time limitation was not fatal to the proposed amendment. Id.
However, the supreme court recently distinguished FLAG in Extending Sales Tax on the basis that the proposed amendment to the sales tax was self-executing. Extending Sales Tax, 953 So.2d at 485. The sales tax proposal, set to be placed on the ballot for the upcoming November 2008 general election, required the legislature to complete the impossible task of reviewing every "service rendered for compensation" by July 1, 2008, four months before the proposed amendment would appear on the ballot. Id. at 484. It further stated that "all services that are not exempted by the Legislature shall be subject to the existing sales tax effective January 1, 2009." Id. The supreme court held that the provision was intended to be self-executing because it "impose[d] significant consequences if the Legislature failed to act by July 1, 2008." Id. The court invalidated the proposed amendment, holding that the date-specific language in congruence with the Ballot Summary could confuse or mislead voters "as to how or whether the legislative review could occur." Id. at 485.
In the case before us, the Ballot Summary language stating that "the Hillsborough County Charter [shall] be revised to replace the ... appointed County Administrator for a[n] ... elected County Mayor," means that an elected Mayor will replace the County Administrator in January 2009 following the November 2008 election if the proposed amendment passes.[11]Extending Sales Tax, and not FLAG, is controlling because this amendment is clearly self-executing: its main purpose, a structural change in county government resulting in the election of a County Mayor, would occur without the aid or involvement of any legislative body. Moreover, the plain and ordinary meaning of the proposed amendment's date-specific language prevents an election of a County Mayor in *1276 the 2008 general election and, as in Extending Sales Tax, voters "may be confused and misled" as to how or when the County Mayor would succeed the County Administrator.
The Sponsor further attempted to distinguish this case from Extending Sales Tax during oral argument, claiming that a 2008 mayoral election is not a critical part of this proposed amendment. The Sponsor argued that the date-specific language is unimportant and should be ignored or replaced with more general language because the amendment's true purpose is to change the structure of government. However, when statutes, or other instruments with legal effect, are clear and unambiguous, courts will not look behind the plain language to determine the drafter's intent or resort to rules of construction to ascertain intent. Lee County Elec. Coop., Inc. v. Jacobs, 820 So.2d 297 (Fla.2002). In such event, the instrument's "plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to [the drafter's] intent." State v. Burris, 875 So.2d 408, 410 (Fla. 2004). The plain and unambiguous date-specific language demonstrates that the petitioners desired structural change then, in 2006, and election of a County Mayor now, in 2008, as critical parts of the proposed amendment. We will not look behind this plain language or rewrite the proposed amendment as the Sponsor suggests we do.
Our supreme court has repeatedly issued warnings regarding problems created by using date-specific deadlines. In the FLAG case, the court said:
As discussed earlier in this opinion, the proposed amendment will not appear on the ballot until 1996 at the earliest. In light of this fact, it appears that the proposed amendment has established an impossible deadline. This is a direct result of the unnecessary use of date-specific deadlines when a more general deadline would suffice. For example, the deadline could have been stated as "within 180 days of the voters' approval of this amendment," or language to that effect. Proponents of amendments to the constitution would be well advised to avoid this type of problem in the future.
FLAG, 656 So.2d at 1264; see also Extending Sales Tax, 953 So.2d at 483-84. Had the Sponsor in this case heeded the supreme court's cautionary admonitions, this case would not be before us today.

V. Conclusion
For these reasons, we must conclude that the Ballot Summary is misleading as to the result and effect of the proposed amendment. Assuming, arguendo, that the amendment passed in this year's election, it would nonetheless be impossible to elect a County Mayor in 2008 who would assume office in 2009 as required by the proposal's plain language. Instead, the earliest election to fill that post would occur in 2010. During that time period, it appears a vacuum would exist under the amended Charter as to which office would be responsible for the county's administration. The Ballot Summary is certainly misleading and confusing when it fails to address this problematic consequence of passage of the proposed amendment.
As the Hillsborough County Charter sets forth in section 8.03, "[t]he power to propose amendments to this Charter by initiative is vested in the people." In this petition, the People have spoken by ratifying the language the Sponsor proposed which plainly and unambiguously contemplates amending the Charter in 2006 so that the first County Mayor may be elected in 2008. Had a 2008 County Mayor election not been critical, there was no need to enshrine it in the County Charter. When the People's language is clear, no court has occasion to resort to a rule of construction. To do otherwise, the court *1277 abrogates the power that is vested in the People. Cf. Cherry v. State, 959 So.2d 702, 713 (Fla.2007) ("[C]ourts have no occasion to resort to rules of construction  they must read the statute as written, for to do otherwise would constitute an abrogation of legislative power") (quoting Nicoll v. Baker, 668 So.2d 989, 990-91 (Fla.1996)).
In addition to giving the language of the petition its plain and ordinary meaning, our construction gives effect to all parts of the petition. Cf. Koile v. State, 934 So.2d 1226, 1231 (Fla.2006) ("[P]rovisions in a statute are not to be construed as superfluous if a reasonable construction exists that gives effect to all words and provisions.").
In summary, in comparing the plain and unambiguous language of the proposed amendment to the Hillsborough County Charter to the language of the Ballot Summary, we conclude that the Ballot Summary is misleading in that it fails to inform the voter that a County Mayor will not, in fact, be elected in the year 2008. Therefore, we hold that the amendment does not meet the statutory requirements set forth by section 101.161(1), and the trial court correctly removed the proposed amendment from the ballot.
Appeal affirmed; cross-appeal reversed.[12]
CASANUEVA, STRINGER, and KHOUZAM, JJ., Concur.
NOTES
[1] We commend the parties on the quality of their briefs and their able representation at oral argument on such an expedited basis.
[2] Hillsborough County Charter, Section 8.03. Initiative.

The power to propose amendments to this Charter by initiative is vested in the people:
1. The power may be invoked by filing with the supervisor of elections a petition containing a copy of the proposed Charter amendment. Each petition must be circulated in each numbered board district and must be signed by a number of electors in each of one-half of districts 1 through 4 and of the county as a whole equal to eight percent of the votes cast in each of such districts and the county as whole in the last preceding election in which a president or presidential electors were chosen. The address of each signer, and date of each signature, must appear on the petition. Each petition shall embrace but one subject and matter properly connected therewith. A date certain must be designated to and certified by the supervisor of elections as the beginning date of any petition drive, and said drive shall terminate six months after that date. In the event sufficient signatures are not acquired during that six-month period, the petition drive shall be rendered null and void and none of the signatures may be carried over onto another identical or similar petition.
2. The petition shall be filed with the supervisor of elections who shall, within a period of not more than thirty (30) days, determine whether the petition contains the required valid signatures. The supervisor shall be paid the sum specified by general law by the persons or committee seeking verification.
1. If it is determined that the petition does not contain the required signatures, the supervisor shall so certify to the board of county commissioners and the petition drive shall be at an end. No additional names may be added to the petition, and the petition shall not be used in any other proceeding.
2. If it is determined that the petition has the required signatures, the supervisor shall so certify to the board of county commissioners and place the amendment on the ballot.
3. All other procedures shall be as provided by general law for constitutional amendments with the supervisor of elections performing the duties of the secretary of state.
[3] In 2006, the Sponsor operated under the name "Taking Back Hillsborough County Political Committee, Inc."
[4] The Supervisor also certified the start of a companion petition drive, Charter Amendment Petition 06-4, titled "Providing County Mayor With Veto Power; Providing Board [of County Commissioners] Power to Override With Two-Thirds Vote Initiative." No one has challenged placing this proposal on the 2008 ballot.
[5] Following the Supervisor's action in certifying the proposal for the 2008 general election, the Sponsor filed suit against the Supervisor of Elections in the circuit court to have the proposal appear on the November 2006 ballot, but it did not succeed. The circuit court's ruling upheld the Supervisor's deadline for submitting petitions so ballots could be printed, thus pushing back the proposal to 2008. Taking Back Hillsborough County Political Comm., Case No. 06-CA-005933 (Fla. 13th Jud. Cir. 2006). This judgment was not appealed.
[6] Chapter 101 of the Florida Statutes regulates voting procedures and methods. Section 101.161(1) deals with referenda and ballots. It provides:

(1) Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot after the list of candidates, followed by the word "yes" and also by the word "no," and shall be styled in such a manner that a "yes" vote will indicate approval of the proposal and a "no" vote will indicate rejection. The wording of the substance of the amendment or other public measure and the ballot title to appear on the ballot shall be embodied in the joint resolution, constitutional revision commission proposal, constitutional convention proposal, taxation and budget reform commission proposal, or enabling resolution or ordinance. Except for amendments and ballot language proposed by joint resolution, the substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. In addition, for every amendment proposed by initiative, the ballot shall include, following the ballot summary, a separate financial impact statement concerning the measure prepared by the Financial Impact Estimating Conference in accordance with s. 100.371(5). The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
[7] Although a named party to the action filed below, the Supervisor has no interest in the merits of the issues on appeal or in the substance of the proposed amendment. The parties agree, and we concur, that the Supervisor followed the governing law and properly performed his ministerial duties in approving the format of the petition form without addressing its substance. There is no dispute that the format of the petition is in accordance with governing law. See Fla. Admin. Code. R.1S-2.009, Constitutional Amendment by Initiative Petition (adopted under the specific authority of sections 20.10(3), 97.012(1), 100.371(3), (7), 101.161(2), Fla. Stat. (2007), and implementing §§ 100.371 and 101.161).
[8] The language the circuit court quotes is actually in the proposed revised text of Charter section 5.03(1), not in the Ballot Summary. We conclude that this error has no legal effect on the disposition of this appeal.
[9] Even more impossible is the 2008 primary election the proposed amendment requires, since that primary election has already passed as of the issuance of this opinion.
[10] The supreme court later reiterated its guide to determining whether a constitutional provision is self-executing:

"The basic guide, or test, in determining whether a constitutional provision should be construed to be self-executing, or not self-executing, is whether or not the provision lays down a sufficient rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment. If the provision lays down a sufficient rule, it speaks for the entire people and is self-executing."
Extending Sales Tax, 953 So.2d at 484 (quoting Gray v. Bryant, 125 So.2d 846, 851 (Fla. 1960)).
[11] The face of the Charter Amendment Petition Form states that "[t]his amendment shall take effect upon passage by the voters."
[12] This court is aware that our supreme court recently ruled on two cases involving ballot initiatives, Department of State v. Slough, SC08-1569 (Fla. Sept. 3, 2008) (affirming the circuit court's judgment removing Amendment 5 from the November 2008 general election ballot; noting that its opinion would follow), and Ford v. Browning, SC08-1529 (Fla. Sept. 3, 2008) (reversing the circuit court's judgment and enjoining placement of proposed Amendments 7 and 9 on the November 2008 general election ballot; noting that the opinion would follow). As of this date, the court has yet to issue a written opinion in either case.