992 So.2d 190 (2008)
ADVISORY OPINION TO THE ATTORNEY GENERAL RE REFERENDA REQUIRED FOR ADOPTION AND AMENDMENT OF LOCAL GOVERNMENT COMPREHENSIVE LAND USE PLANS.
No. SC06-521.
Supreme Court of Florida.
September 25, 2008.
Bill McCollum, Attorney General, Louis F. Hubener, Solicitor General and Leah L. Marino, Deputy Solicitor General, Tallahassee, Florida, for Petitioner.
Ross Stafford Burnaman, Esquire, on behalf of Florida Hometown Democracy, Inc., Tallahassee, Florida, as Sponsor.
PER CURIAM.
In 2006, this Court approved for placement on the ballot a proposed amendment to the Florida Constitution that requires local governments to submit a new comprehensive land use plan, or an amendment to an existing comprehensive land use plan, to a vote by referendum prior to adoption. See Advisory Opinion to Attorney Gen. re Referenda Required for Adoption *191 & Amendment of Local Gov't Comprehensive Land Use Plans, 938 So.2d 501, 506 (Fla.2006) (Land Use Plans I). While this Court considered the validity of the petition, the Attorney General also requested that we review the corresponding financial impact statement to evaluate its compliance with section 100.371, Florida Statutes.
In our initial decision, we concluded that we possessed jurisdiction to review the financial impact statement, and remanded the statement to the Financial Impact Estimating Conference (FIEC) to be redrafted because the statement in its then-current form did not meet the statutory requirements. See Advisory Opinion to Attorney Gen. re Referenda Required for Adoption & Amendment of Local Gov't Comprehensive Land Use Plans, 963 So.2d 210, 210-15 (Fla.2007) (Land Use Plans II); see also art. IV, § 10; art. V, § 3(b)(10), Fla. Const. On July 31, 2007, the Attorney General filed a revised financial impact statement with this Court and requested an opinion with regard to whether the revised statement complies with section 100.371, Florida Statutes (2007).

ANALYSIS
Article XI, section 5 of the Florida Constitution, which addresses financial impact statements, provides in relevant part:
(c) The legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by the initiative pursuant to section 3.
Section 100.371(5), Florida Statutes (2007), governs financial impact statements and provides:
(5)(a) Within 45 days after receipt of a proposed revision or amendment to the State Constitution by initiative petition from the Secretary of State, the Financial Impact Estimating Conference shall complete an analysis and financial impact statement to be placed on the ballot of the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative. The Financial Impact Estimating Conference shall submit the financial impact statement to the Attorney General and Secretary of State.
....
(c)2. Principals of the Financial Impact Estimating Conference shall reach a consensus or majority concurrence on a clear and unambiguous financial impact statement, no more than 75 words in length, and immediately submit the statement to the Attorney General. Nothing in this subsection prohibits the Financial Impact Estimating Conference from setting forth a range of potential impacts in the financial impact statement....
....
(e)1. Any financial impact statement that the Supreme Court finds not to be in accordance with this subsection shall be remanded solely to the Financial Impact Estimating Conference for redrafting, provided the court's advisory opinion is rendered at least 75 days before the election at which the question of ratifying the amendment will be presented. The Financial Impact Estimating Conference shall prepare and adopt a revised financial impact statement no later than 5 p.m. on the 15th day after the date of the court's opinion.
§ 100.371(5), Fla. Stat. (2007). When this Court determines the validity of a financial impact statement, we limit our review solely to the issue of whether the statement is clear and unambiguous, consists of no *192 more than seventy-five words, and is limited to addressing the estimated increase or decrease in any revenue or costs to state or local governments. See Advisory Opinion to Attorney Gen. re Funding of Embryonic Stem Cell Research, 959 So.2d 195, 202 (Fla.2007).
The first financial impact statement with regard to this proposed amendment, which was submitted to this Court for approval in Land Use Plans II, provided:
The direct impact of this amendment on local government expenditures cannot be determined precisely. Over each two year election cycle, local governments cumulatively will incur significant costs (millions of dollars statewide). Costs will vary depending on the processes employed by cities and counties in obtaining approval for plan amendments. The direct impact on state government expenditures will be insignificant. There will be no direct impact on government revenues.
Land Use Plans II, 963 So.2d at 214. This Court remanded the statement to the FIEC to be redrafted because we concluded that the second sentence in the statement was misleading:
This statement ... assumes that numerous local governments will have out-of-cycle changes to their respective comprehensive land use plans, necessitating special elections. Although the Financial Impact Estimating Commission is speculating that local government will be holding special out-of-cycle elections, the statement itself does not indicate that the estimated millions of dollars is dependant upon how many times counties and cities throughout the State will attempt out-of-cycle amendments to their comprehensive land use plans. In fact, the apparent purpose of the proposed amendment is to limit the amount of revisions to a county's or a city's comprehensive land use plan. The Commission's assumption assumes that the proposed amendment will not have its intended effect. Because this sentence is misleading and does not inform the voter that the anticipated costs are contingent upon such factors, the Court finds that the second sentence in the financial impact statement does not comply with section 100.371(5), Florida Statutes.
Id. at 214-15.
After remand, the FIEC pursuant to section 100.371(5)(e)(1), Florida Statutes, prepared the revised statement that has been submitted for our review. The revised statement provides:
The direct impact of this amendment on local government expenditures cannot be determined precisely. It is probable that local governments will incur significant costs (millions of dollars statewide) with actual costs dependent upon the frequency and method of referenda. Costs will include those for ballot preparation and additional administrative costs and expenses for the referenda. The direct impact on state government expenditures will be insignificant. There will be no direct impact on government revenues.
We conclude that the financial impact statement as revised suffers from the same flaw which led us to hold that the impact statement in Land Use Plans II did not comply with the requirements of section 100.371.
In Land Use Plans II, we noted that the apparent purpose of this amendment "is to limit the amount of revisions to a county's or a city's comprehensive land use plan." 963 So.2d at 215. However, as with the impact statement from Land Use Plans II, the language of the revised statement simply continues to give the misleading impression that the proposed amendment will *193 not have its intended effect, and that "significant costs" will arise due to the need for a special election each time local government seeks to amend its land use plan out-of-cycle. Indeed, the statement strongly implies that continuing special elections are an inevitable result of this amendment.[1] As drafted, the revised financial impact statement would mislead voters into believing that implementation of the amendment will require the expenditure of millions of dollars. Such an inference is patently contrary to the purpose of the amendment, which is to limit the number of amendments to local comprehensive land use plans.
The revised statement is additionally misleading because the conclusion that local governments will incur "millions of dollars" statewide if the amendment is approved is based upon purely speculative assumptions with regard to how often local governments will seek to adopt or amend their comprehensive land use plans, and whether those local governments that seek to adopt or amend a plan will operate in a time frame that requires a special electionwith all of its attendant costs and expenses. Moreover, the vague reference to "significant costs" and "millions of dollars" is problematic. According to the revised statement, the cost of implementation of the amendment could be anywhere from $2 million to $999 million. Such imprecise terminology would lead citizens to believe that the implementation of the amendment would automatically cost hundreds of millions of dollars. As a result, citizens may vote against the amendment, not because they do not wish to have a voice with regard to the amendment of local government land use plans, but solely because of fear generated by the misleading statement concerning the potential economic consequences of the amendment. This revision contains the same problems which caused the earlier rejection of the statement.

CONCLUSION
The revised statement prepared by the FIEC is misleading because it inaccurately implies that the amendment will lead to an increase in costly special elections, contrary to the proposed amendment itself, and because it fails to articulate with any precision the estimated cost of the amendment. See § 100.371(5)(a), Fla. Stat. (2007) (a financial impact statement shall describe "the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative"). Therefore, we hold that the revised financial impact statement does not comply with section 100.371(5). In accordance with section 100.371(5)(e)(1), we remand the statement to the Financial Impact Estimating Conference to be redrafted.
It is so ordered.
QUINCE, C.J., and ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
WELLS, J., dissents with an opinion, in which CANTERO, Senior Justice, concurs.
BELL, J., dissents with an opinion.
WELLS, J., dissenting.
The majority strikes the revised financial impact statement as misleading, stating that the revised statement "simply continues to give the misleading impression that the proposed amendment will not *194 have its intended effect, and that `significant costs' will arise due to the need for a special election each time local government seeks to amend its land use plan out-of-cycle." Majority op. at 5. In essence, the majority is striking the statement because the majority does not agree with the conclusions of the Financial Impact Estimating Conference (FIEC). This is an improper basis upon which to strike a financial impact statement since the Court limits itself to addressing "whether the statement is clear, unambiguous, consists of no more than seventy-five words, and is limited to address the estimated increase or decrease in any revenues or costs to the state or local governments." Advisory Opinion to Attorney Gen. re Referenda Required for Adoption & Amendment of Local Gov't Comprehensive Land Use Plans, 963 So.2d 210, 214 (Fla.2007).
In reviewing the revised financial impact statement, the FIEC clearly states that it believes that it is probable that local governments will incur significant costs and that the costs are dependent on the frequency and method of the referenda. Thus, the revised financial impact statement addressed the previous problem by indicating that its estimate is dependent upon how many special out-of-cycle elections are held throughout the State.
A review of the FIEC's "Summary of Initiative Financial Information Statement" shows the basis of the FIEC's statement. The FIEC carefully detailed the complicated statutory process behind the comprehensive land use plan amendment process. One thing is clear from the current statutory scheme: local governments cannot necessarily correlate the referendum on their land use plan amendments with an already scheduled election. In order to adopt a comprehensive land use plan amendment, local governments must conduct numerous steps and eventually submit a proposed amendment to the Department of Community Affairs (Department) as statutorily required. The Department issues its "Objections, Recommendation, and Comments Report," after which local governments have a limited number of days in which they can adopt an amendment, adopt the amendment with changes, or decide not to adopt the amendment. The proposed constitutional amendment changes this process by requiring local governments to hold a vote by referendum before adopting or amending a comprehensive land use plan. Thus, the election will have to be tied to the date that the local governments receive the objections, recommendation, and comments from the Department.
In determining the impact of the proposed constitutional amendment, the FIEC relied on information provided at multiple workshops; presentations by the sponsors; "surveys and questionnaires from state agencies, the sixty-seven Supervisor[s] of Elections, and city and county planners"; and other material, including its own independent research. Based on statutory limitations, each local government may adopt amendments to their comprehensive plan no more than twice per calendar year. The survey responses indicated that the majority of local governments did not anticipate that the proposed amendment would change the volume of plan amendments. If any entity could predict whether the proposed constitutional amendment would change the number of land use plan amendments, a survey of all local officials would be the best at predicting its impact. Additionally, the FIEC relied on responses from local government planners and county supervisors regarding how the amendments might be grouped and presented to the voters. Relying on the survey responses from local planners and county supervisors, the FIEC found that election costs would be impacted regardless *195 of whether elections would be special or general elections, and that over a two-year election cycle, special elections would likely be necessary at least three times. The FIEC found that the minimum cost of holding a non-election cycle referendum affecting only twenty-five percent of the voters in Florida within a two-year period would likely be in excess of $2.4 million, which was a highly conservative figure based on its research and survey of numerous local officials and state agencies. Thus, even if only a very small number of local governments required a special election once every other year, the statewide impact would still be in the range of millions of dollars. Based on all of this information and research, the FIEC composed a revised financial impact statement which set forth an estimated range as to the financial impact on both state and local governments, informing the voters that its estimate was contingent upon the number and manner of special elections that would be needed.
In determining that the revised financial impact statement is "misleading" because the statement still suggests that significant costs will occur due to the need for special elections, the majority substitutes its judgment for the judgment of the FIEC. Moreover, the majority ignores the current statutory provision for adopting a comprehensive land use plan amendment which requires that the amendment be adopted shortly after the Department issues its objections, recommendation, and commentsa process which the proposed constitutional amendment does not amend. The FIEC clearly undertook a detailed and thorough analysis as to the effect of the proposed constitutional amendment if it was passed, including surveying city planners and election officials in each of the sixty-seven counties throughout this State. A survey of the responses from local governments themselves indicated that they did not anticipate that the number of proposed plan amendments would change under the proposed constitutional amendment. It is not a matter for this Court to hold, as a matter of law, that these projections are inaccurate; this Court is without the authority to second-guess the FIEC's thorough review and analysis.
CANTERO, Senior Justice, concurs.
BELL, J., dissenting.
The constitution does not grant this Court of limited jurisdiction the authority to render advisory opinions regarding financial impact statements. Moreover, pragmatically, this case demonstrates that our limited review of these statements does not provide an adequate venue to fully and fairly assess the validity of such financial impact statements.
As I explained in my dissent in Advisory Opinion to the Attorney General re Referenda Required for Adoption & Amendment of Local Government Comprehensive Land Use Plans, 963 So.2d 210, 215 (Fla. 2007), this Court's jurisdiction to render an advisory opinion regarding an initiative petition is limited to issues concerning the validity of the initiative petition itself. Indeed, article IV, section 10 of the Florida Constitution expressly limits the subject matter of an attorney general's request for an advisory opinion "to the validity of any initiative petition circulated pursuant to Section 3 of Article XI." And because the validity of the initiative petition itself is not dependent upon the validity of the financial impact statement, this Court does not have the authority to issue advisory opinions on financial impact statements.
Pragmatically, this case demonstrates that this Court's limited review simply does not provide an adequate mechanism for reviewing financial impact statements. *196 It is difficult for this Court to analyze whether financial impact statements are valid because the records before us are quite minimal. In this case, for example, the record initially contained very little information regarding how the Financial Impact Estimating Conference (FIEC) determined that the initiative would cost "millions of dollars." After remand, the FIEC provided a seven-page summary regarding its estimate, including a description of how land use plans are currently amended. The FIEC's summary noted that it had conducted a survey of supervisors of elections and local planners. However, the record in this case still does not include important and relevant details, such as how many localities believe they will require out-of-cycle amendments to their land use plans. And, most importantly, our review in this case has not allowed for an adversarial testing of the information utilized by the FIEC. There has been no presentation of evidence and arguments to a neutral fact-finder.
Instead of acknowledging that this Court lacks the record necessary to render an informed opinion regarding the validity of this financial impact statement, the majority chooses to disagree with the FIEC's conclusions. As Justice Wells explains, "[i]n determining that the revised financial impact statement is `misleading' because the statement still suggests that significant costs will occur due to the need for special elections, the majority substitutes its judgment for the judgment of the FIEC." Dissenting op. at 11. The majority does so without any developed record indicating that the FIEC's conclusions are incorrect. Because fair judicial review requires an adversarial determination, I cannot join the majority.
Accordingly, even if we had the constitutional authority to render advisory opinions regarding financial impact statements, there are pragmatic concerns that limit our ability to fully and fairly review the validity of such statements.[2] Therefore, I respectfully dissent.
NOTES
[1] The Initiative Financial Information Statement prepared by the FIEC states that "[o]ver each two year election cycle, assuming local governments continue to amend their plans at least twice per year, special elections will probably be necessary at least three times." (Emphasis supplied.)
[2] My conclusion does not mean that a financial impact statement cannot be reviewed by a court of original jurisdiction. As I explained previously, "[i]t seems that a court of original jurisdiction may review the financial impact statement for compliance with section 100.371." Advisory Opinion to the Attorney Gen. re Referenda Required for Adoption & Amendment of Local Gov't Comprehensive Land Use Plans, 963 So.2d at 219 n. 8 (Bell, J. dissenting) (citing art. V, §§ 5-6 Fla. Const.; § 26.012, Fla. Stat. (2006); § 34.01, Fla. Stat. (2006)). Indeed, a court of original jurisdiction is capable of providing the necessary full and fair adversarial determination.