PER CURIAM.
 

 The Attorney General of Florida has requested this Court’s opinion as to the validity of a financial impact statement that relates to an initiative petition circulated pursuant to article XI, section 3 of the Florida Constitution. We have jurisdiction.
 
 See
 
 art. IV, § 10; art. V, § 3(b)(10), Fla. Const.
 

 In 2006, this Court approved for placement on the ballot a proposed constitutional amendment relating to amending comprehensive land use plans.
 
 See Advisory Op. to Att’y Gen. re Referenda Required for Adoption & Amendment of Local Gov’t Comprehensive Land Use Plans,
 
 938 So.2d 501 (Fla.2006)
 
 (Land Use Plans I).
 
 This proposed amendment would require local governments to submit a new comprehensive land use plan, or an amendment to an existing plan, to a vote by referendum prior to adoption.
 

 While this Court considered the validity of the petition, the Attorney General also requested that we review the corresponding financial impact statement to evaluate whether it complied with section 100.371, Florida Statutes (2006). In our initial decision, we concluded that we had jurisdiction to review and, if necessary, reject proposed financial impact statements.
 
 See Advisory Op. to Att’y Gen. re Referenda Required for Adoption & Amendment of Local Gov’t Comprehensive Land Use Plans,
 
 963 So.2d 210, 213-14 (Fla.2007)
 
 (Land Use Plans II).
 
 We determined that the statement in its then-current form did not meet the statutory requirements and remanded the statement to the Financial Impact Estimating Conference (FIEC) to be redrafted.
 
 See id.
 
 at 214-15.
 

 After the statement was revised, the Attorney General requested that we again review the revised financial impact statement to evaluate whether it complied with section 100.371, Florida Statutes (2007). For a second time, we rejected and remanded the statement to the FIEC, holding that this second statement “suffer[ed] from the same flaw which led us to hold that the impact statement in
 
 Land Use Plans II
 
 did not comply with the requirements of section 100.371.”
 
 In re Advisory Op. to Att’y Gen. re Referenda Required for Adoption & Amendment of Local Gov’t Comprehensive Land Use Plans,
 
 992 So.2d 190, 192 (Fla.2008)
 
 (Land Use Plans III).
 

 On October 14, 2008, the Attorney General filed the second revised financial impact statement with this Court and re
 
 *226
 
 quested an opinion with regard to whether the second revised statement complies with section 100.371, Florida Statutes (2008). The statement provides:
 

 The amendment’s impact on local government expenditures cannot be estimated precisely. Local governments will incur additional costs due to the requirement to conduct referenda in order to adopt comprehensive plans or amendments thereto. The amount of such costs depends upon the frequency, timing, and method of the referenda, and includes the costs of ballot preparation, election administration, and associated expenses. The impact on state government expenditures will be insignificant.
 

 The proponent of the amendment now asserts that the second revised financial impact statement is proper. For the reasons addressed below, we hold that this statement complies with section 100.371.
 

 ANALYSIS
 

 This Court’s review is narrow: the Court is to determine only whether the statement complies with the requirements provided in the Florida Constitution and the statutes. Article XI, section 5, Florida Constitution, addresses financial impact statements and provides in relevant part:
 

 (c) The legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the
 
 probable financial impact of any amendment
 
 proposed by initiative pursuant to section 3.
 

 (Emphasis supplied.) Pursuant to article XI, section 5(c), the Legislature set forth the following provisions, addressing the financial impact statement:
 

 (5)(a) Within 45 days after receipt of a proposed revision or amendment to the State Constitution by initiative petition from the Secretary of State, the Financial Impact Estimating Conference shall complete an analysis and financial impact statement to be placed on the ballot of the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative. The Financial Impact Estimating Conference shall submit the financial impact statement to the Attorney General and Secretary of State.
 

 (c)....
 

 2. Principals of the Financial Impact Estimating Conference shall reach a consensus or majority concurrence on a clear and unambiguous financial impact statement, no more than 75 words in length, and immediately submit the statement to the Attorney General. Nothing in this subsection prohibits the Financial Impact Estimating Conference from setting forth a range of potential impacts in the financial impact statement. Any financial impact statement that a court finds not to be in accordance with this section shall be remanded solely to the Financial Impact Estimating Conference for redrafting. The Financial Impact Estimating Conference shall redraft the financial impact statement within 15 days.
 

 § 100.371(5), Fla. Stat. (2008).
 

 Based on these statutory requirements, in reviewing a financial impact statement, the Court has “limited itself only to address whether the statement is clear, unambiguous, consists of no more than seventy-five words, and is limited to address the estimated increase or decrease in any revenues or costs to the state or local governments.”
 
 Land Use Plans II,
 
 963 So.2d at 214. In addressing whether the financial impact statement is clear and unambiguous, we review whether the statement of potential impact is misleading, vague, or confusing.
 

 
 *227
 
 Here, the initial financial impact statement provided as follows:
 

 The direct impact of this amendment on local government expenditures cannot be determined precisely. Over each two year election cycle, local governments cumulatively will incur significant costs (millions of dollars statewide). Costs will vary depending on the processes employed by cities and counties in obtaining approval for plan amendments. The direct impact on state government expenditures will be insignificant. There will be no direct impact on government revenues.
 

 Land Use Plans II,
 
 963 So.2d at 214. We found the second sentence was defective, explaining:
 

 Specifically, [the sentence] states that “[o]ver each two year election cycle, local governments cumulatively will incur significant costs (millions of dollar's statewide).” This statement, however, assumes that numerous local governments will have out-of-cycle changes to their respective comprehensive land use plans, necessitating special elections. Although the Financial Impact Estimating Commission is speculating that local government will be holding special out-of-cycle elections, the statement itself does not indicate that the estimated millions of dollars is dependant upon how many times counties and cities throughout the State will attempt out-of-cycle amendments to their comprehensive land use plans. In fact, the apparent purpose of the proposed amendment is to
 
 limit
 
 the amount of revisions to a county’s or a city’s comprehensive land use plan. The Commission’s assumption assumes that the proposed amendment will not have its intended effect.
 

 Id.
 
 at 214-15.
 

 After remand, the FIEC revised the financial impact statement to provide:
 

 The direct impact of this amendment on local government expenditures cannot be determined precisely. It is probable that local governments will incur significant costs (millions of dollars statewide) with actual costs dependent upon the frequency and method of referenda. Costs will include those for ballot preparation and additional administrative costs and expenses for the referenda. The direct impact on state government expenditures will be insignificant. There will be no direct impact on government revenues.
 

 Land Use Plans III,
 
 992 So.2d at 192. We found this revised statement to be defective for the same reasons. We first held that the statement was problematic because the statement gave “the misleading impression that the proposed amendment will not have its intended effect” and that it assumed that special elections would be an inevitable result of this amendment.
 
 Id.
 
 at 192-93. Second, the financial impact statement was misleading because it concluded “that local governments will incur ‘millions of dollars’ statewide if the amendment is approved” and that this estimate was based upon “purely speculative assumptions,” including assumptions as to how often local governments will adopt or amend their comprehensive land use plans, whether the amendment or adoption of the plan will require a special election, and the costs and expenses of any election.
 
 Id.
 
 at 193. On a related issue, we found that the vague reference to “significant costs” and “millions of dollars” was problematic because such terminology could lead citizens to “believe that the implementation of the amendment would automatically cost hundreds of millions of dollars.”
 
 Id.
 

 The current financial impact statement does not suffer from the same de
 
 *228
 
 fects as the prior two versions. First, the statement no longer implies that the proposed amendment will automatically require any out-of-cycle elections; thus, there is no longer any concern that the financial impact statement will lead voters to believe that the proposed constitutional amendment will not have its intended effect of reducing the number of plan amendments. Second, the statement eliminates the prior vague terms that could be interpreted as requiring the expenditure of millions of dollars if the financial impact statement is approved. While the financial impact statement clearly notes that local governments will incur additional costs to conduct referenda, it simply lists those items that will clearly be required by the plan amendment, including the costs of preparing and printing the ballot and relating to election administration and associated expenses.' The financial impact statement no longer speculates on these expenses, acknowledging that the precise cost is highly variable and listing the factors upon which the costs depend. Because the statement is “clear, unambiguous, consists of no more than seventy-five words, and is limited to address the estimated increase or decrease in any revenues or costs to the state or local governments,”
 
 Land Use Plans II,
 
 963 So.2d at 214, we find that the financial impact statement as currently drafted complies with the mandates of Section 100.371, Florida Statutes (2008).
 

 It is so ordered.
 

 QUINCE, C.J, and PARIENTE, LEWIS, LABARGA, and PERRY, JJ„ concur.
 

 CANADY and POLSTON, JJ., concur in result only.